■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AMOS CLARK, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered December 13, 1976, convicting him of robbery in the first degree and burglary in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. During cross-examination of an alibi witness, who was defendant's common-law wife, the prosecutor, over objection, persisted in inquiring whether she ever went to the police or the District Attorney with "this story". Such a line of inquiry may be proper provided: (1) a specific instruction be promptly given to the jury that "an alibi witness has no obligation to come forward and contact the police or the District Attorney" *(People v Smoot,* 59 AD2d 898, 899); and (2) that the jury be further instructed that it is to consider such testimony and to give it such weight, if any, on the issue of credibility, as it deems proper under the circumstances. No such instructions were given here. Under the circumstances, we hold the line of questioning pursued to be prejudicial (see *People v Hamlin,* 58 AD2d 631; *People v Wilson,* 60 AD2d 920). On cross-examination of a defense witness who had prepared a letter setting forth the time defendant started work on the day in question, the prosecutor elicited that a second letter had been prepared by the witness on the day prior to when she testified. The court's comment on defense counsel's refusal to give this second letter to the prosecution, coupled with the reference to this letter in the prosecutor's summation, amounted to a prejudicial inference to the jury that defense counsel was fabricating evidence. Furthermore, the prosecutor's summation, although largely provoked by defense tactics, was in its entirety highly prejudicial. In addition to the improper comment concerning the second letter, the prosecutor erred in vouching for the credibility of prosecution witnesses and in denigrating defense counsel and defendant's alibi and alibi witness (see *People v Garcia,* 40 AD2d 983; *People v Jones,* 47 AD2d 761; *People v Petrucelli,* 44 AD2d 58; Code of Professional Responsibility EC 7-24). Mollen, P. J., Hopkins and O'Connor, JJ., concur; Titone, J., concurs in the result, with the following memorandum, in which Shapiro, J., concurs: Although I concur for reversal, I do not agree with the majority's decision insofar as it dilutes the thrust and effect of this court's decision in *People v Hamlin* (58 AD2d 631). According to the majority, Hamlin stands for the proposition that where a witness for the defendant gives alibi testimony on direct, the prosecutor on cross-examination may inquire whether he or she ever went to the police or District Attorney with the story, provided the Trial Judge promptly instructs the jury that the alibi witness had no obligation to come forward and contact such law enforcement agencies, and that the jury be further instructed that it is to receive such testimony and give it whatever weight it deems proper under the circumstances. However, the decision in *Hamlin* was all inclusive; not only did it assign as error the failure of the trial court to give the instructions noted above, but also condemned both prosecutorial cross-examination and summation pertaining to an alibi witness' failure to

come forward and divulge his or her story to the police or District Attorney. This is clearly evinced by the following language extracted from the majority memorandum *(People v Hamlin,* 58 AD2d 631, 632, *supra):* "In our opinion, the defendant-appellant was denied a fair trial by the persistent and improper efforts of the prosecutor to discredit the testimony of two of his alibi witnesses. *We also believe, in connection with such prosecutorial conduct, that the trial court committed reversible error in allowing it to continue and then giving it credence in the charge to the jury* \* \* \* Four alibi witnesses, including defendant's brother, Billy Hamlin, and an acquaintance of defendant, Jimmy Burden, testified that at the time the alleged crime was committed [7:00 P.M. on Feb. 21, 1975], defendant was playing cards in the office of a junkyard. During the cross-examination of Billy Hamlin, the witness was asked whether he had refused to answer questions addressed to him by the prosecutor earlier in the witness room as to what had happened on February 21, 1975. Although the trial court advised the jury that the witness was under no obligation to answer such questions, *it overruled defense counsel's objection and permitted the prosecutor to continue.* During the cross-examination of Jimmy Burden, the prosecutor questioned him extensively about his failure to respond to a subpoena to appear in the District Attorney's office relative to the case. The trial court also overruled an objection to this line of interrogation \* \* \* *We believe that such prosecutorial tactics were fundamentally unfair and prejudicial and should have been curtailed at their inception* \* \* \* Cross-examination and summation may not be based upon fictitious assumptions which only confuse the fact-finders and impede the search for truth \* \* \* The clear purport of the prosecutor's endeavors in this instance was to implant in the jurors' minds the baseless proposition that the testimony of the two alibi witnesses was unworthy of belief simply because they had cooperated with defendant and his attorney and did not divulge whatever information they possessed to law enforcement authorities beforehand \* \* \* *Furthermore, the trial court erred not only in allowing the prosecutor to continue the aforesaid questioning* \* \* \* *but also in charging* the jurors that they *might 'consider all the facts developed about the* [alibi] *witnesses* and about what they did in response to subpoenas' " (emphasis and first bracketed matter supplied). Moreover, support for the argument that in *Hamlin* the majority held that such cross-examination constituted error, is found in the following statement contained in the dissenting memorandum of Martuscello, J. (p 634): "Even if one were to conclude, *as the majority does,* that the cross-examination of Burden and Hamlin was error, such error was not prejudicial" (emphasis supplied). It should also be noted that, contrary to the position set forth in the majority's memorandum in the matter at bar, this court in *People v Smoot* (59 AD2d 898), did not hold that a line of inquiry of an alibi witness by the prosecutor on cross-examination concerning his or her failure to give information exonerating an accused, may be proper under certain conditions enumerated therein. In *Smoot* (p 899) this court, citing *Hamlin,* stated unequivocally: "Likewise, an alibi witness has no obligation to come forward and contact the police or the District Attorney; *such silence by an alibi witness may not be used as a means of discrediting the witness, either upon cross-examination or during* the People's summation" (emphasis supplied). Finally, stripped of all extraneous arguments, the theme underlying the position taken in the above memorandum by my colleagues is that the credibility of an alibi witness may be held suspect by the trier of the facts solely because that person had co-operated with defendant and his attorney and did not divulge pertinent information

to law enforcement authorities before indictment or trial. Such position is untenable. Conduct not necessarily inconsistent with the testimony of a witness cannot be shown to discredit him (98 CJS, Witnesses, § 464). Where there is no occasion for a witness to speak, evidence of his silence is inadmissible (cf. *Vaughn v State* 12 Ala App 383; *Starry v Starry & Lynch,* 208 Iowa 228). Before a witness can be impeached based on his prior silence, it must be shown that he had a duty to speak on a prior occasion but remained silent (2 Wharton's Criminal Evidence [13th ed], § 470). The time, place and circumstances attending the omission on the prior occasion must be shown with such definiteness as to support the findings that the duty to disclose and the opportunity for disclosure existed *(State v Fletcher,* 36 NM 47). As cogently stated in the *Fletcher* case (p 50): "It is the fixed rule that, before a witness may be impeached by proof of former contradictory statements, his attention must first be directed to what may be brought forward for that purpose. And this must be done with particularity as to time, place, and circumstances, so that he can deny it, or make any explanation intending to reconcile what he formerly said with what he is now testifying * * * And, where the impeachment is predicated upon the omission to make a statement on a prior occasion, fairness to the witness demands the preliminary showing of time, place and circumstance with as great particularity in the one case as in the other. The protection furnished by the rule is primarily for the benefit of the witness, not the parties." In the case at bar, the record demonstrates that no proper predicate was laid by the prosecution to impeach the alibi witness because of her silence. At no time during cross-examination did the prosecutor make a prima facie showing that the alibi witness was ever furnished with the occasion or opportunity to exculpate the defendant, such as having her testimony elicited by a Grand Jury or in a preliminary hearing and that the witness on such occasion failed to disclose facts in accordance with her trial testimony (see *People v Owens,* 65 Ill 2d 83). In sum, having laid no such foundation, it follows that the trial prosecutor's questioning herein of the alibi witness about her failure to divulge the alibi story to law enforcement authorities was clearly error.