## No. 10,188.

### MCKEE v. THE PEOPLE.

Decided July 3, 1922.   Rehearing denied October 2, 1922.

Plaintiff in error was convicted of murder.

### *Affirmed.*

1. CRIMINAL LAW—*Corpus Delicti.* The corpus delicti in all cases of homicide must be proven beyond a reasonable doubt either by direct or circumstantial evidence.

    On review of the record in the case under consideration, the contention that the corpus delicti was not proven, is overruled.

2. *Witnesses—Defendant.* When a defendant in a criminal case takes the witness stand in his own behalf, he occupies precisely the same position as any other witness.

3.    *Failure of Defendant to Testify in Former Trial—Comment by District Attorney.* Where on a second trial the defendant in a criminal case was asked on cross examination if that was the first time he had testified in the case and he replied that it was, it is held that he was not prejudiced by the question and answer, nor by comments thereon by the district attorney in his argument to the jury.

4.    INSTRUCTIONS—*Requests.* It is not error to refuse a requested instruction where the matter incorporated therein is properly covered in an instruction given by the court.

5.    CRIMINAL LAW—*Instructions—Reasonable Doubt.* Trial courts should follow the instruction on reasonable doubt which has been repeatedly approved by the supreme court.

*Error to the District Court of Washington County, Hon. L. C. Stephenson, Judge.*

Mr. EDWIN H. PARK, Messrs. RELIHAN, RELIHAN & REID, Mr. CHALKLEY A. WILSON, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. SAMUEL CHUTKOW, assistant, Mr. CHARLES H. SHERRICK, assistant, Mr. ISAAC PELTON, for the people.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

PLAINTIFF in error was tried for the murder of his wife, and was convicted of murder in the first degree and sentenced for life. This is the third trial of the case. On a former trial the case was brought here and reversed. *McKee v. The People*, 69 Colo. 580, 195 Pac. 649.

Plaintiff in error contends that the *corpus delicti* was not proved and that his motion for a directed verdict should have been sustained. It is elementary that the *corpus delicti* in all cases of homicide must be proven beyond a reasonable doubt, either by direct or circumstantial evidence. The evidence in this case was circumstantial, and in some respects conflicting, and we deem it unnecessary as serving no useful purpose to recite the evidence

for the purpose of exhibiting the facts upon which the jury predicated its verdict. It is sufficient to say that after a careful reading of the entire record we are confident in holding that the evidence is sufficient to justify the verdict, and that the *corpus delicti* was sufficiently proven as required by the decisions of this court. *Ausmus v. People,* 47 Colo. 167, 107 Pac. 204, 19 Ann. Cas. 491; *Byram v. People,* 49 Colo. 533, 113 Pac. 528; *McBride v. People,* 5 Colo. App. 91, 37 Pac. 953.

It is also contended that the court erred in permitting the district attorney to interrogate the defendant, when on the last trial the defendant exercised his statutory privilege and took the witness stand in his own behalf, with reference to his failure to testify on the former trials, and also permitting the prosecuting officer to comment in his closing argument to the jury upon that fact. The defendant was asked, "Mr. McKee, this is the first time you have testified in this case, isn't it?" and the defendant answered, "It is." In his argument to the jury the district attorney said. "This is the first time in the history of these three trials that Artie McKee ever took the stand." We cannot hold that the question was improper, or that the statement of the district attorney commenting on the facts constituted error. When the defendant exercised his right under the statute to take the witness stand and give testimony in his own behalf, he elected to place himself in the same situation as any other witness. "Having elected to do this, under our statute (Revised Statutes 1908, Section 1984) he occupied precisely the same position as any other witness. He could be cross-examined; contradictory evidence could be offered in rebuttal, and he could be impeached; or his credibility could be attacked in any of the methods recognized by the rules of evidence as applicable to the testimony of ordinary witnesses." *McKeone v. People,* 6 Colo. 346, 347. The defendant was not prejudiced either by the question or by the comment of the district attorney.

It is urged that error was committed in refusing defendant's instruction No. 2 defining reasonable doubt. The instruction tendered does not follow the form heretofore approved by this court. The instruction given by the court on reasonable doubt followed the approved form in *Minich v. People,* 8 Colo. 440, 454, 9 Pac. 4, and since that pronouncement this court has repeatedly expressed its disapproval of the efforts of attorneys and trial courts to change, modify or enlarge it. We said in *McQueary v. People,* 48 Colo. 214, 225, 110 Pac. 210, 215, (21 Ann. Cas. 560) : "We have had occasion several times to call the attention of district attorneys and trial judges to the advisability of following an approved instruction on the subject of reasonable doubt, as approved in *Minich v. People,* 8 Colo. 454, for the reason that this is the safe practice and obviates the necessity of a consideration of instructions on the subject differently worded. *Boykin v. People,* 22 Colo. 496; *Van Wyk v. People,* 45 Colo. 1. We deem it proper here to repeat what was said by Chief Justice Steele, in the Van Wyk case, in referring to the instruction on reasonable doubt in the Minich case: 'The instruction there approved appears to us now to be sufficiently comprehensive, and we suggest that efforts at its modification or enlargement only consume the time of court and counsel, and we again recommend its use without change.' "

We have carefully considered the entire record, the assignments of error, and the written arguments of counsel, and are fully persuaded that the facts and circumstances disclosed by the record are amply sufficient to sustain the verdict. A full review of the whole record satisfies our minds that the plaintiff in error has had a fair trial under the law and has not been prejudiced in any substantial right, and that the judgment of conviction ought to be affirmed. Judgment affirmed.

Mr. Justice Teller dissents.

Mr. Chief Justice Scott and Mr. Justice Campbell not participating.

MR. JUSTICE TELLER dissenting:

Where a trial involves liberty or life, and the evidence of the offense charged is wholly circumstantial, it is necessary, I conceive, that the rules of procedure which have been established, as the result of long experience, to prevent a miscarriage of justice, should be carefully observed. Because there were, in this case, serious infractions of those rules, which I should appear to approve by concurring in the majority opinion, I am impelled to dissent and to state the grounds therefor. Much more than the question of the guilt of the plaintiff in error is involved in this case.

Objection was made to this question put to the defendant. "This is the first time you have testified in this case, isn't it?" and to this comment by the district attorney in his address to the jury, "This is the first time in the history of these three trials that Artie McKee ever took the stand."

The objection is based upon the statute which provides that "in no case shall neglect or refusal of the accused to testify be taken or considered as evidence of his guilt or innocence." It is elementary that evidence is admissible only when it has some bearing upon the question in issue. The admission of this evidence, and the comment upon it, assume that it was relevant to the issue. If not so, it should have been excluded on objection made. The objection is not answered by the statement in the majority opinion, that when the accused takes the stand he is to be treated as any other witness would be treated. No witness should be required to answer irrelevant questions. The accused's failure to testify on former trials was thus placed before the jury as a matter to be considered on the subject of his guilt, in direct violation of the law which prohibits such consideration.

In *Petite v. People,* 8 Colo. 518, 9 Pac. 622, this court, in discussing this statute, recognized the difficulty of preventing the jury from drawing prejudicial inferences from

the silence of the accused, though court and counsel be silent on the subject, and declared that too much care cannot be exercised by courts in giving effect to the statute, which was said to be intended to aid the accused in making his defense. In the instant case court and counsel aided in bringing the matter before the jury. Such an obvious flouting of the views expressed by this court should not be tolerated, much less approved.

In *Brown v. State,* 57 Tex. Cr. Rep. 269, 122 S. W. 565, it was held that on a plea of not guilty it is never competent, at any time or place, to make proof that the defendant did not testify on a former trial, and that the admission of evidence to that effect was reversible error. Tennessee has a statute which prohibits the failure of the accused to testify creating a presumption against him.

In *Smithson v. State,* 127 Tenn. 357, 155 S. W. 133, the court said:

"The policy of the statute is to protect a defendant against argument based on such failure,  *  *  *  whether that failure occur in the immediate trial or in a former trial. To hold otherwise would be to put on a defendant the hazard of foreseeing in the earlier trial the effect in a subsequent trial of such failure; whereas the policy of the statute is to protect him in the trial in which he is first put to his election, as well as in a later trial."

The question could have had but one purpose and one effect, that is, to suggest to the jury that the fact that the defendant had not testified theretofore was because, being guilty, he was afraid to offer himself as a witness; or, that the fact that he had not testified was material in this case, wherein it could be material only as bearing upon the question of his guilt. That the district attorney was convinced of defendant's guilt is no excuse for such a breach of his duty as the state's representative on the trial.

This court has frequently called attention to the duty of prosecutors to deal fairly with an accused. To present no evidence not deemed competent, and to exclude no evidence

which is competent. See *Bailey v. People,* 54 Colo. 337, 130 Pac. 832, 45 L. R. A. (N. S.) 145, Ann. Cas. 1914C, 1142; *Ritchey v. People,* 23 Colo. 314; 47 Pac. 272, 384; *Hillen v. People,* 59 Colo. 280, 149 Pac. 250; *Tarling v. People,* 69 Colo. 477, 194 Pac. 939; *Miller v. People,* 70 Colo. 313, 201 Pac. 41.

The majority opinion makes no mention of an assigned error on remarks made by the court in ruling upon a question as to the surroundings under which defendant was reared. The remarks, under the circumstances of this case, were likely to prejudice the jury, but as there is little danger that other judges will fall into a like error, and thus violate the rule which prohibits remarks likely to influence the jury, I do not deem it necessary to discuss the matter.

A more serious error is charged to the court in disputing with defendant's counsel as to what a witness had stated, and in refusing to counsel for defendant the usually granted privilege of latitude in putting questions, when surprised by the answers of a witness which show him to be unfriendly. Dr. Larson arrived at the scene of the homicide at about seven o'clock, two hours after the discovery of Mrs. McKee's body. No other witness was so well qualified to testify as to the conditions surrounding or immediately after this discovery. He testified on a former trial, was present at this trial at the instance of the state, but was not called by the prosecution. When counsel for the defense learned that he had been allowed to go home, they brought him back and called him as a witness. They claimed that, under these circumstances, they should be allowed to call to his attention discrepancies between his testimony and that given on the former trial, and that they should not be bound by the ordinary rules as to leading questions, the purpose being to put before the jury the situation as found by this physician when he came to the McKee home.

Counsel for the state made strenuous objection, and

was sustained by the court. The district attorney in failing to call Dr. Larson, a witness best able to testify as to the conditions of the body immediately after it was discovered, and in opposing the efforts of defendant's counsel to bring out facts, violated the rules announced by this court, as above mentioned. Under these well established rules he was required to call Dr. Larson, but having failed to do so, the defendant's counsel was compelled to call him to give facts to the jury to which they were entitled, and which the state ought to have desired should be considered. The law is well settled as to the duty of the prosecution in this respect. *Johnson v. State,* 88 Neb. 328, 129 N. W. 281; *Wellar v. People,* 30 Mich. 16; *People v. Etter,* 81 Mich. 570, 45 N. W. 1109; *State v. Metcalf,* 17 Mont. 417, 43 Pac. 182.

In the first Michigan case cited, in an opinion in which the eminent Judge Cooley concurred, it was said:

"As explained in *Hurd v. People,* 25 Mich. 406, and in the English cases there referred to, a public prosecutor is not a plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty, and he has no right to suppress testimony."

Again speaking of a witness known to have knowledge of the facts, the court said:

"And if such a witness need not be called by the prosecution, the defense cannot impeach him, and must either call him, and run the risk of finding him against them, or, if they fail to call him, be prejudiced by the argument that they have omitted to prove what was in their power, and must have done so because they dare not call out the facts. There is no fairness in such a practice, and a prosecutor should not be permitted to resort to it. He is not responsible for the shortcomings of his witnesses, and he is responsible for any obstacle thrown in the way of eliciting all the facts. The judgment must be reversed and a new trial granted."

A violation of this same rule is found in the successful

attempt of the prosecution to prevent the defendant's counsel from calling Dr. Larson's attention to a variation between his testimony on this trial, and that of the former trial. There is a manifest attempt upon the part of the state to prevent the jury being fully advised as to the facts. In *People v. Etter, supra,* the court said:

"The only legitimate object of the prosecution is to show the whole transaction as it was, whether its tendency be to establish guilt or innocence."

I now come to the dispute between court and counsel as to Dr. Larson's testimony.

The theory of the defense was that from the flowing of blood from the wound in the head of the deceased, a time could be determined prior to which the wound could not have been made, and there was evidence tending to show that if the wound was bleeding at seven p. m. the killing could not have occurred before three o'clock, the time when the defendant left home. The evidence as to the bleeding was, therefore, very important to that theory.

A hypothetical question was put to Dr. Dooly, called by the defense, in which it was recited that at seven o'clock on the day of the murder there was some blood flowing from the wound. Objection was made by the state to that part of the question, on the ground that no witness testified that any blood was flowing at seven o'clock.

Counsel for the defendant asserted that such testimony had been given by Dr. Larson, and the court interposed as follows:

"The very last answer he made to you was that there was not."

The objection was therefore sustained, and that part of the question was eliminated. The record shows the following questions and answers on the examination of Dr. Larson:

"Will you state, Doctor, whether or not you observed any arterial blood flowing from that wound at seven o'clock when you examined the body?"

There was strenuous objection to this question by the

state, but the witness was permitted to answer as follows:

"Well, it is my judgment that I did not observe any arterial blood. I observed some bloody fluid coming from the brain, but it was after night, dark, twilight, pretty hard to tell whether it was arterial blood or venous blood."

Q. "There was either one or the other flowing at that time?

A. Yes, sir, there was some fluid coming from the brain."

The fact is that the witness had said that there was either venous or arterial blood flowing from the wound, though he afterwards qualified his statement somewhat. It appears, then, that the court announced in the presence of the jury that the doctor's answer had stated at the close of this examination that there was no blood flowing from the wound. That was not a correct statement of the evidence, and practically informed the jury that, if they had any recollection that the Doctor had testified as counsel for defendant claimed, they were mistaken. The remark excluded from the consideration of the jury a very important piece of testimony in support of the defendant's theory. Such comment was prejudicial to the rights of the defendant, and is ground for reversal.

In *State v. Washington,* 30 La. Ann. 49, counsel, in addressing the jury, made a statement based upon the testimony. The trial judge denied that there was such testimony and the reviewing court said:

"Were he mistaken, the denial by the judge of a fact asserted by an attorney, would often impair, and might even destroy the legitimate effect of proper evidence, dispel reasonable doubts, reconcile conflicting opinions, change already formed convictions, and substitute—to that of the jurors—the judge's recollection of the facts disclosed on the trial."

In *Miller v. People, supra,* this court held that statements by counsel in argument not supported by evidence, were clearly prejudicial to the defendant. If that be so, state-

ments by the court would certainly be prejudicial.

A fact is ordinarily established by circumstantial evidence by proving a series of facts constituting a chain, in which each fact is a link. No man can say what fact in evidence thus proved turned the scale in any juror's mind. This emphasizes the necessity for a strict observance of the rules of evidence and procedure.

The plaintiff in error was convicted of murdering his wife with whom the record shows he had lived in perfect harmony. The evidence was entirely circumstantial, and under such circumstances violations of the rules laid down for the protection of accused persons are of more importance than they might be under other circumstances. My concern is not only that this defendant be fairly tried, but that there may be no abandonment of rules which are the result of age-long judicial experience, and the study and thought of learned judges.