395 P.2d 727

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Mervil Edward BROWN, Defendant and Appellant.**

**No. 10067.**

Supreme Court of Utah.

Oct. 15, 1964.

Maxwell Bentley, Salt Lake City, for appellants.

Allen M. Swan, Salt Lake City, for respondents.

**58**

Phil L. Hansen, Salt Lake City, for appellant.

A Pratt Kesler, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice.

Mervil E. Brown appeals from a second jury verdict convicting him of forcible rape. A prior conviction of this same offense was reversed and remanded for a new trial. The facts are set forth quite fully in the previous opinion, 14 Utah 2d 324, 383 P.2d 930. A new trial was granted primarily because the district attorney had commented on the failure of defendant's wife, who was present at the trial, to take the stand and testify in support of his alibi that he was at home at the time the offense was committed.[1]

Upon the second trial, from which this appeal is taken, the defendant's wife, Barbara Brown, did testify. The principal error complained of in this case also harks back to the fact that she did not testify in the first trial. It arises out of her cross-examination by the district attorney. After she had testified on direct to various facts tending to support her husband's alibi that he was not at the scene of the crime but was at home, the district attorney questioned her thus:

"Q. Mrs. Brown—

"A. Yes.

"Q. Have you ever testified before in this matter?

"A. No."

---

1. Section 12, Art. I, Constitution of Utah. " * * * The accused shall not be compelled to give evidence against himself; a wife shall not be compelled to testify against her husband, nor a husband against his wife, * * *." This section is implemented in Secs. 78–24–8(1) and 77–44–4, U.S.C.A.1953.

Defendant urges that this amounted to a comment on the claim of privilege in the first trial and was in direct violation of our decision in the prior case that no comment should be made concerning the exercise of the privilege not to testify.

█ We first note that had above quoted cross-examination been left alone without defense counsel bringing out other facts on redirect, the jury may well have been unaware that Mrs. Brown had claimed the privilege in the prior trial. There could have been several reasons, including absence or sickness, why she had not testified before. However, we deem it in keeping with judicial propriety not to quibble about the matter and to meet the issue squarely. For that purpose we accept defense counsel's contention: That the district attorney asked the question in order to discredit Mrs. Brown; and that from the entire record the jury would have been aware that she had claimed privilege and did not testify in the first trial, so counsel felt obliged to bring out the fact that he had advised her to do so. Even so, from our study of the matter, it is our opinion that no prejudicial error was committed.

██ We observe in passing that, generally speaking, the interdiction against commenting on the claim of privilege not to testify relates to the case in which the privilege is exercised and not to other proceedings, such as this subsequent trial.[2] More directly approaching the critical question here: The defense could either claim the privilege or waive it, whichever it thought would be to its best advantage. But it could not engage in halfway measures by waiving the privilege and obtaining the benefit of having her testify and still claim some of the protection refusal to testify affords. As we pointed out in the former case, if the privilege is claimed it should be scrupulously protected. But when it is waived, it is done away with just as though it did not exist, and the witness is then in the same status and subject to the same treatment as any other witness, no more and no less. This includes being subjected to cross-examination.

The questions then arise: Would the fact that Mrs. Brown claimed her privilege in the first trial be a legitimate inquiry to test the truthfulness of her testimony?; and more fundamentally, would it have any probative value in determining the defendant's guilt or innocence? On these questions the defense again must take one position or another: Either that it has some probative value, or that it does not. If it has no probative value whatsoever, then it was harmless error to admit it. But if it has any probative value, then in the interest of investigating the truth, there is no impropriety in letting the jury know all the facts.

2. See State v. Marsin, 82 Ariz. 1, 307 P. 2d 607.

 Inasmuch as the evidence under discussion obviously has no direct bearing on the crime itself, any value it may have would be only upon the credibility of the witness. It is such a well-known characteristic of human behavior that when one is accused of a crime of which he is innocent, he will make a denial, that if one fails to deny such an accusation, when he is at liberty to speak, his silence may be considered as some evidence bearing on his guilt.[3] Somewhat akin to this, but admittedly of lesser force, is the principle we deal with here. It is also in accord with human experience that if a person knows facts which would tend to protect others whose interests are in hazard, particularly members of his own family, he will generally speak up when opportunity is afforded and offer the protection rather than to remain silent and withhold it. Accordingly, when a person claims to have such exculpatory information and remains silent when it would be natural to expect that persons of normal sensibilities and concern for others would speak, that fact may be shown

as having a bearing on the credibility of the witness and upon the existence or non-existence of the facts the witness later comes forward to assert.[4]

In spite of the facts that Mrs. Brown was present at the first trial and that there must have appeared a very strong likelihood that her husband would be convicted of a serious and infamous crime, she chose to remain silent. But in the second trial, she came forward to testify to facts concerning his being at home near the time the offense was committed. This would have had such an important bearing on establishing his innocence that it seems natural to expect that if she had known such facts the evidence should have been presented in the first trial. It is but natural to wonder why it was not. This, of course, is subject to any explanation that may be offered, as was done in this case.[5] Nevertheless, under the facts here presented, and the principles hereinabove discussed, the fact that she did not testify at the first trial could reasonably be considered as having a bearing upon the credibility of her testimony given.

3. See State v. Barlow, 8 Utah 2d 396, 335 P.2d 629; see generally, 22A C.J.S. Criminal Law § 734(1), pp. 1068–1069.
4. See People v. Jones, 61 Cal.App.2d 608, 143 P.2d 726; Allen v. State, 173 Md. 649, 197 A. 144; McKee v. People, 72 Colo. 55, 209 P. 632; Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L. Ed. 1054, but cf. also Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed. 2d 84, see Wigmore on Evidence Third Ed., § 1042(3). This noted authority

explains that, " * * * much depends on the individual circumstances, and in all [cases] the underlying test is, *Would it have been natural for the person to make the assertion in question?"* If so, and the witness remained silent, that fact may be shown as bearing on his credibility. (Emphasis added.)
5. See Commonwealth v. Smith, 163 Mass. 411, 40 N.E. 189; see Wigmore op. cit. § 1044.

at the second. We therefore think that no error was committed in bringing out the facts before the jury.

Other points on appeal have been considered and we have found no error which would justify reversal of the conviction.

Affirmed. No costs awarded.

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.