THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH COLARCO, Appellant.

First Department, June 19, 1979

## APPEARANCES OF COUNSEL

*Michael A. Ciaffa* and *Alice L. Litter* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Cary W. Sucoff* of counsel *(Alan D. Marrus* with him on the brief; *Mario Merola, District Attorney),* for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

Defendant appeals from a judgment of Supreme Court, Bronx County, convicting him after jury trial of two counts of robbery in the first degree, and a count of attempted robbery in the first degree, and sentencing him to concurrent indeterminate terms of imprisonment of 7 to 21 years and 5 to 15 years.

There are involved here three knife-point robberies, or attempted robberies, of women in elevators of apartment buildings at Co-op City.

The point that divides the court relates to the propriety of the cross-examination of defendant's alibi witness—his mother-in-law—who testified that defendant was with her at the time of two of the three robberies.

As our colleague Justice SANDLER points out in his dissent, the questioning and the scope of cross-examination with respect to disclosure of alibi by the alibi witness have been the subject of much recent discussion. In our view cross-examination of alibi witnesses is not much different from cross-examination of other witnesses. There are few, if any, per se prohibitions—questions that can never be asked in any circumstances. An alibi witness like any other witness may be cross-examined with a view to pointing up the improbability of the witness' testimony.

In the present case, so far as appears from the record, the first reference to the existence of an alibi witness was in a notice of alibi served 18 months after the crime and approximately three months before the trial. As our dissenting colleague agrees, the alibi witness may properly be cross-examined as to when and to whom the witness first disclosed the fact of the alibi; such circumstances obviously bear on the credibility of the witness' testimony. The half dozen or dozen questions here involved were directed to that issue, asking whether the witness had told anybody that defendant was with her at the crucial time—the police, the District Attorney, the Grand Jury, or the defendant's attorney. Of course such cross-examination like any examination may in a particular case exceed the bounds of propriety. Thus it is improper to conduct the examination in such a way as to suggest to the

jury that there is some *duty* on the part of an alibi witness to come forward and report to the prosecution rather than the defense. Whether a particular series of questions violates that proscription will vary with the series of questions. That there was no such implication in the questions here involved is demonstrated by the fact that the prosecutor asked not only whether the witness told the prosecuting authorities, but also whether the witness communicated with the *defense attorney.* The dissent apparently believing these questions to be irrelevant omits to quote the questions on cross-examination immediately following the portion quoted in the dissenting opinion:

"Q. Now, the defendant had an attorney at that point, didn't he?

"A. Yes.

"Q. He had a lawyer. Were you in communication with the lawyer at that time?

"A. I did not know who that lawyer was.

"Q. Didn't ask your son-in-law who his lawyer was?

"MR. FUSCO: I object to this.

"THE COURT: Overruled.

"A. I only know Mr. Fusco.

"Q. But you never asked your son *(sic),* at the time he was arrested, who his lawyer was, is that correct? ·

"MR. FUSCO: I object to that.

"THE COURT: Overruled.

"A. No."

These questions as to whether the witness told the *defendant's lawyer* at that time show that the thrust of the questions was not a duty to tell the prosecuting authorities but the failure to tell anybody.

The questions could and should have been asked in a less sarcastic way; and the question that the witness "certainly" went to the Grand Jury and asked to testify before them was plainly improper. Obviously, a witness has no right at his own volition to appear before a Grand Jury.

But all of this and the explanation of when the alibi witness first came forward and why she did not come forward earlier are matters that could have been gone into on redirect. Instead, on redirect, defendant's attorney merely asked two plainly improper—and effectively suggestive—questions:

"Would it have done you any good to go to" the District Attorney? the police? He chose not to ask the proper questions as to when the witness came forward, and to whom she spoke and why she did what she did. Significantly, defendant's attorney did not advert, even by an improper question, to the one point, a favorable response to which would have been a complete explanation of the witness' conduct—her communication with defendant's attorney.

The evidence of guilt was very strong, including identification by each of the victims in the three crimes. The alibi evidence was extremely weak—that for 29 hours the defendant was continuously in the alibi witness' apartment, five minutes from the scene of the crimes.

We do not think the few questions here involved, all but the one about the Grand Jury proper enough, require reversal on this strong showing of guilt and this very weak alibi evidence.

The remaining issue, as to denial of the application to suppress identification evidence, requires no discussion in this opinion.

The judgment of the Supreme Court, Bronx County (SILBERMANN, J.), rendered August 5, 1977, convicting defendant on jury verdict, of robbery in the first degree (Penal Law, § 160.15) (two counts) and attempted robbery in the first degree (Penal Law, §§ 110, 160.15), and sentencing him thereon, should be affirmed.

SANDLER, J. P. (dissenting). On this appeal the principal issue once again is whether the District Attorney may properly cross-examine a defense witness with regard to the failure of the witness previously to communicate exculpatory information to the police and to the District Attorney.

Over the past several years the issue has been frequently litigated in this court and in the Appellate Division, Second Department. (See 1st Dept: *People v Milano,* 59 AD2d 852; *People v Brown,* 62 AD2d 715; *People v Maschi,* 65 AD2d 405; *People v Burgos,* 69 AD2d 783; *People v Nolasco,* 70 AD2d 549. See 2d Dept: *People v Hamlin,* 58 AD2d 631; *People v Mims,* 59 AD2d 769; *People v Smoot,* 59 AD2d 898; *People v Lindsay,* 61 AD2d 992; *People v Cox,* 61 AD2d 1035; *People v Clark,* 64 AD2d 669; *People v Dale,* 65 AD2d 625.) Although the results in many and perhaps all of these cases may be reconciled in terms of the underlying facts, it cannot be doubted that the question has evoked widely divergent judicial responses. The

facts on this appeal are particularly well suited to illuminating the nature of the issue.

The witness in question is the defendant's mother-in-law. In substance, she testified that the defendant was with her at the time of two of the three robberies for which he was convicted.

She was cross-examined by the District Attorney in pertinent part as follows:

"Q Now, he'd been arrested, is that correct?

"A He had been arrested.

"Q Once the daughter called, is that right?

"A That's what she told me.

"Q Did you go to the police to tell them they have got to have the wrong man because I know where he was?

"MR. FUSCO: I object to that question.

"THE COURT: Overruled.

"MR. FUSCO: Exception.

"Q Did you tell the police that?

"A No. I felt that—

"Q Yes or no. Did you tell the police that?

"A No.

"Q Well, you certainly didn't come to the Office of the District Attorney and tell them—

"MR. FUSCO: I object to this question.

"Q —(cont'd) that they couldn't have the right man.

"THE COURT: The objection is overruled.

"MR. FUSCO: And I take an exception, if your Honor please.

"Q Did you come to my office and tell us that we must have made a mistake, the police must have made a mistake?

"MR. FUSCO: I move for the withdrawal of a jury because of these questions.

"THE COURT: Overruled. The motion is denied. The trial is continued.

"MS. DISTASIO: Do I answer the question?

"THE COURT: Yes.

"A No. Because—

"Q Yes or no.

"A No.

"Q Well, certainly you went to the Grand Jury, didn't you,

the citizens who comprise that body, and asked to testify before them?

"MR. FUSCO: I object to that.

"THE COURT: Overruled.

"MR. FUSCO: Again I move for a withdrawal of the jury.

"THE COURT: The motion is denied

"MR. HUME: Judge, I ask for a responsive answer from the witness.

"MS. DISTASIO: Judge, could I explain something to you?

"THE COURT: No. You may answer questions. That's all.

"A No. I didn't know when the—

"THE COURT: All right. You've answered it.

On redirect examination, the following occurred:

"Q Would it have done you any good to go to the District Attorney—

"MR. HUME: Objection, your Honor.

"THE COURT: The objection to that is sustained.

"MR. FUSCO: That was brought out on cross.

"THE COURT: Fine. Let's continue. Ask the next question.

"Q Would it have done you any good to go to the police—

"MR. HUME: Same objection.

"THE COURT: The objection to that is sustained.

"MR. FUSCO: I move for a withdrawal of the jury and a mistrial, Judge.

"THE COURT: The ruling is that there will be no mistrial. There will be no withdrawal of a jury.

The jury will disregard all of this. Let's proceed.

"MR. FUSCO: I have no further questions.

"THE COURT: Fine. You may step down.

"MR. FUSCO: In view of your Honor's ruling."

There are two aspects of the question on which there is general agreement.

First, a prosecutor may properly cross-examine a defense witness with regard to when and the circumstances under which the witness became aware that either he or she was in possession of exculpatory information and to whom the witness spoke thereafter with regard to that information. In this connection, it was clearly appropriate to inquire as to what a witness did to insure that the fact of the exculpatory informa-

tion as well as the availability of the witness to testify would become known to defense counsel and when such action was taken.

Second, it is also agreed that the prosecutor may not appropriately suggest that a witness is under a duty to communicate exculpatory information to the police or to the District Attorney.

The core question, the one on which there is widespread disagreement, is whether interrogation of a defense witness with regard to the failure to communicate evidence to the police and the District Attorney has a legitimate bearing on the credibility of the witness. I am persuaded that in the usual situation it does not.

The principal purpose for this kind of cross-examination is to persuade the jury that the testimony is not reliable because if it were truthful the witness would have gone to the police and the District Attorney in an effort to obtain the release of the arrested person or the dismissal of the charges. Although this thesis has a superficial appeal, its fundamentally defective character becomes immediately apparent upon analysis.

Take for example the situation of a parent or spouse of a defendant arrested after being identified as the perpetrator of a crime or after a police officer has reported that the defendant made an inculpatory statement. Would any knowledgeable person seriously suppose that the District Attorney would dismiss the charges upon being told by a close relative of the defendant that the defendant was with the witness at the time the crime occurred? The answer is obvious. And even if this highly improbable proposition were accepted as colorable, is there a basis in normal experience for concluding that the witness would reasonably expect such a response sufficiently substantial to permit impeachment of the witness for failing to act upon such an expectation?

The instant case is illustrative. The defendant was arrested and charged for the commission of two robberies and an attempted robbery on three separate occasions in different elevators of a large apartment complex. He was identified first by one victim and thereafter by the other two victims.

Can it be seriously thought that the District Attorney would have dismissed these charges upon being told by the defendant's mother-in-law that he was with her when two of the criminal acts occurred? Did the District Attorney in fact

believe that the witness thought, or could reasonably have thought, that her statement would have been given credence?

I do not doubt that the District Attorney disbelieved the testimony of this witness. I do doubt that these questions were put in the good faith belief that they had a legitimate relevance to her credibility.

Indeed one of the most disturbing aspects of this kind of cross-examination is that it is obvious that the questions often are not asked in good faith.

The above analysis is addressed to the special problem of the witness who is a close relative of the defendant. A more general and inclusive principle seems to me to require the same conclusion with regard to any defense witness, absent very unusual circumstances. The cross-examination at issue here fundamentally misconceives the nature of our adversary system of litigation.

It would not be supposed for a single moment in a civil litigation that a witness for one party, absent a special relationship to the other party, could be fairly impeached for failure to seek out the opposing party or that party's lawyer to inform them of the evidence that the witness intends to give. And it would be immediately recognized as preposterous if a defense lawyer sought to impeach a prosecution witness by cross-examining with regard to the failure of that witness to seek out the defendant or defense counsel to inform them of his intended testimony. The same principle applies with equal force in the reverse situation.

The failure to perceive this undoubtedly derives from the principle that a prosecutor's obligations transcend those of a lawyer for one party in a lawsuit. As a public servant his central duty is of course to seek justice, not a conviction. However, it does not follow that a lay witness may fairly be cross-examined on the assumption that he understands this principle and may reasonably be expected to act on the basis that it would be followed in the particular case. And yet this assumption, which has no discernible basis whatever in common experience or observation, underlies the kind of cross-examination at issue here.

Indeed a major vice in this situation, which has received very little attention, is that it introduces to a jury in the middle of a criminal trial the concept of the special role of the District Attorney. It is of course fundamental in a criminal trial that the prosecutor and defense counsel occupy an equal

position in the eyes of the jury. Any suggestion in the presence of the jury that the District Attorney occupies a superior status, that he has special responsibilities that entitle him to greater respect and trust, would immediately be recognized as error.

The cross-examination at issue here clearly proceeds on the assumption that the District attorney would objectively and scrupulously evaluate and act upon information tending to exculpate a defendant, and that the defense witness is chargeable with knowledge of this duty and may reasonably be expected to act on that knowledge. Indisputably this accurately describes the District Attorney's obligation, although informed people are aware that the fidelity with which the duty is discharged varies widely among individual District Attorneys. However that may be, the introduction of this concept to the jury in the middle of a criminal trial must inevitably be prejudicial to the defendant. For this reason as well, the cross-examination here was improper.

It is not an adequate response to this analysis to state the obvious truth that an alibi witness "may be cross-examined with a view to pointing up the improbability of the witness' testimony." Surely that begs the question, which is whether the failure of a defense witness to seek out and inform the police and the District Attorney of exculpatory information has a legitimate bearing on the credibility of the testimony.

Nor do I think the improper cross-examination was somehow clarified and made appropriate by the few questions asked at the end of that segment of the cross-examination which elicited the relevant but not very startling information that at the time the defendant was arrested the witness did not know who his lawyer was and did not then ask him. Although not important to the issue, it is interesting to observe that the District Attorney, ostensibly intent on determining when and to whom the witness spoke, somehow failed to ask the witness when she first spoke to defense counsel.

The underlying nature of our disagreement is best pointed up by the statement in Judge SILVERMAN's opinion for the court that the District Attorney was simply seeking to determine "when and to whom the witness first disclosed the fact of the alibi". I respectfully suggest that this comment wholly and palpably misconceives the reality of what occurred here and the reality of what occurs whenever this kind of cross-examination is employed.

If that were indeed the District Attorney's purpose, there was available to him a simple time-tested technique for achieving it, one known to prosecutors for over a generation to my personal knowledge. He need only have asked the witness "when and to whom the witness first disclosed the fact of the alibi."

If the answer to this question revealed that the witness had not disclosed it to anyone until the trial or shortly before the trial, an effective point would have been made. If the witness claimed to have made a disclosure to one or more persons at an earlier time, it would have been appropriate for the District Attorney to cross-examine with regard to the circumstances of those alleged disclosures. Unaccountably the District Attorney omitted to ask the simple question which would have achieved the very purpose attributed to him in the opinion of the court.

The questions asked had only the most peripheral bearing on the District Attorney's supposed purpose, and were in fact wholly unnecessary to it. The obvious fact is that the cross-examination was intended to impair the credibility of the witness by suggesting that she would have come forward and disclosed her testimony to the police and the District Attorney if it were truthful. For reasons set forth above, that inference is a wholly unfair one and the effort to communicate it is inextricably associated with prejudicial and unjustifiable implications.

The remaining question is whether the cross-examination quoted above, and the trial court's palpably erroneous rulings on redirect, require a reversal of the conviction.

It seems to me clear that the evidence was not overwhelming as that term is used in *People v Crimmins* (36 NY2d 230, 242). As to two of the counts for which the defendant was convicted, the principal evidence was identification testimony by the victims of two separate incidents who were unable to identify him when they first observed him in custody under "showup" conditions. Surely the term "very strong" cannot reasonably be applied to those counts. The third conviction rested essentially on the uncorroborated testimony of a victim of the third incident. Although undoubtedly sufficient to support the jury's verdict, I should not have thought until now that such testimony could be classified as "very strong".

On the other hand, I must acknowledge my personal judgment that the jury more likely disbelieved the alibi testimony

because of its improbable character and the relationship of the witness to the defendant than because of the objectionable features of the cross-examination.

However, the cross-examination here was more than ordinarily offensive. It included an inexcusably unfair reference to the failure of the witness to appear before the indicting Grand Jury to which she had not been subpoenaed or in any way invited. (See CPL 190.50.) Moreover, the witness was not permitted to explain either during the cross-examination or on redirect her reasons for not having communicated with the police or the District Attorney.

On balance, I think the errors that occurred were of sufficient importance to justify a reversal of the conviction and remanding for a new trial.

SULLIVAN, LANE and LUPIANO, JJ., concur with SILVERMAN, J.; SANDLER, J. P., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on August 5, 1977, affirmed.