**STATE**

v.

**Donald D'AGOSTINO.**

No. 95–708–C.A.

Supreme Court of Rhode Island.

March 20, 1997.

Andrew Berg, Special Asst. Attorney General, Aaron Weisman, Asst. Attorney General, for Plaintiff.

Robert B. Mann, Providence, for Defendant.

## OPINION

PER CURIAM.

The defendant, Donald A. D'Agostino, appeals from a judgment of conviction entered by the Superior Court after a jury found him guilty of assault with a dangerous weapon, assault on a person over sixty years of age causing bodily injury, and breaking and entering. He claims that the trial justice erroneously limited the scope of his cross-examination of the complaining witness and of his direct examination of his own witnesses. He also faults the trial justice for refusing to give an "empty chair" instruction and asserts that the trial justice should have granted his motion for a new trial. Because we disagree with all these contentions, we affirm the judgment of conviction.[1]

The defendant was the manager of Card's camp in South Kingstown, Rhode Island. The complaining witness, sixty-seven-year old Mitchell A. Marketos, lived at the camp

---

1. We ordered the parties to show cause why we should *not resolve* this appeal *summarily*. Having reviewed their legal memoranda and considered their arguments, we conclude that cause has not been shown and that defendant's appeal can be decided without further briefing and argument.

and was a maintenance worker there before defendant fired him in 1993. After firing him, defendant filed a trespass-and-eject-ment action against Marketos. At trial Marketos testified that he may have told the campground's attorney that the Internal Revenue Service might be interested in al-leged financial irregularities at the camp.

In May of 1994 Marketos was watching television in his brother-in-law's cottage at the camp when he heard a loud banging on the outside storm door. Suddenly defendant burst through the storm door, barged into the room, and began to bludgeon Marketos about his legs and knees with a baseball bat, all the while blurting out, "I don't want you here [and] this is for talking to the IRS."

■ At trial the court sustained objections to defendant's attempts to cross-examine Marketos about his alleged conversations with the campground's attorney during which Marketos had supposedly refused to disclose the schematic for the campground's water system. The defendant claims that this line of questioning should have been allowed to show that Marketos was biased and had been attempting to keep what he knew about the campground's infrastructure close to his vest so that he could ensure that he had a place to live for the rest of his life. However, during defendant's cross-examination of Marketos, defendant's attorney ultimately elicited from him that he had refused to disclose the water schematic of the camp. Moreover, during his direct examination Marketos testified that the incident giving rise to his firing was his not assisting in shutting off a water conduit. Accordingly we believe that the trial justice was within her discretion in limiting cross-examination on this subject. *See, e.g., State v. Pettiway,* 657 A.2d 161, 163 (R.I.1995) ("the permissible scope of and extent of cross-examination lies within the sound dis-cretion of the trial justice"). Additional questioning would have been merely cumula-tive, *see* R.I. R. Evid. 403 ("[a]lthough rele-vant, evidence may be excluded if its proba-tive value is substantially outweighed * * * by considerations of * * * needless presenta-tion of cumulative evidence"), and would have served equally to underscore defendant's mo-tive for mayhem as it would Marketos's al-leged bias.

■ For this same reason we do not be-lieve that the trial justice committed revers-ible error when she limited defendant's direct examination of witnesses Robert Tower (Tower) and Cherrie Perkins (Perkins). The defendant called Tower to testify that during 1993 and 1994 he observed that water mains at the camp had been turned on and their hoses disconnected, thereby dehydrating cer-tain parts of the camp. Because defendant offered no evidence to link this testimony to Marketos, the trial justice correctly excluded it. *See* R.I. R. Evid. 402 ("[e]vidence which is not relevant is not admissible"). The trial justice also did not commit error when she prevented defendant from having Perkins, who was the attorney for the camp, testify about various aspects of her dealings with Marketos. Most of this evidence came in by means of other witnesses and would there-fore have been merely cumulative.

■ We also conclude that defendant's re-quest for a cautionary instruction "on the repeated cross-examination by the State on the matter of the failure or alleged failure of the [alibi] witnesses to go in and give state-ments to the police" was properly denied. The prosecutor cross-examined defendant's alibi witnesses to show that they had failed to make a timely report to the police concerning what they knew of defendant's whereabouts when the assault occurred. At no time dur-ing the approximately one-year period be-tween the assault and the trial did any of these alibi witnesses tell their stories to the investigating authorities. Thus the purpose of the state's cross-examination was to sug-gest that their alibi testimony had been re-cently fabricated. This was entirely proper. *See State v. Gizzarelli,* 651 A.2d 724, 725 (R.I.1994) (approving of such cross-examina-tion).

■ Moreover, defendant's reference to the empty-chair doctrine was inapposite.

"The empty-chair doctrine permits a trial justice to charge a jury that it may draw an inference from a litigant's unexplained failure to produce an available witness who would be expected to give material testi-

mony on the litigant's behalf. This inference is that the witness, had he [or she] testified, would have testified adversely to the litigant." *State v. Taylor,* 581 A.2d 1037, 1038–39 (R.I.1990) (citing *Anderson v. Friendship Body and Radiator Works, Inc.,* 112 R.I. 445, 447, 311 A.2d 288, 291 (1973)).

Although " 'a prosecutor may not comment on a defendant's failure to call witnesses,' " 581 A.2d at 1039; *see also State v. Girouard,* 561 A.2d 882, 890 (R.I.1989) (noting that the question " 'why was the witness chair empty?' * * * is improper as it may suggest to the jury that a defendant has some burden to prove his or her innocence"), no cautionary instruction was necessary here because, as was stated by the trial justice, the prosecutor was imputing a motive to defendant's alibi witnesses and not suggesting that he failed to call them to testify. Indeed, far from being empty, defendant's witness chairs were filled with individuals (one of whom was defendant's wife) who were testifying to alibis that had never before been reported to the police. In these circumstances the prosecutor was entitled to cross-examine the alibi witnesses for the purpose of suggesting that their testimony had been recently fabricated, as evidenced by their unexplained failure to communicate such information to the authorities before defendant's case had come to trial.

Finally, the trial justice did not err in denying the defendant's motion for a new trial. *See generally State v. Snow,* 670 A.2d 239, 243–44 (R.I.1996). This case required the jury to weigh the credibility of witnesses who testified for the prosecution and for the defendant. The defendant has not convinced us that the trial justice overlooked or misconceived any material evidence or that she was clearly wrong in denying his new-trial motion.

For these reasons we deny and dismiss the defendant's appeal and affirm the judgment of conviction.