STATE of Utah, Plaintiff and Appellee,

v.

Norman Andrew HAGA, Defendant
and Appellant.

No. 960405–CA.

Court of Appeals of Utah.

Feb. 26, 1998.

Rebecca C. Hyde and Susanne Gustin–Furgis, Salt Lake City, for Defendant and Appellant.

Jan Graham and James H. Beadles, Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Defendant appeals his convictions for theft, in violation of Utah Code Ann. § 76–6–604 (1995), and burglary, in violation of Utah Code Ann. § 76–6–602 (1995). We remand to the trial court for a restitution hearing, but otherwise affirm.

## FACTS

This case centers on a burglary of Dee Leasing, a wholesale computer store, which occurred on March 12, 1994. Richard Engh testified that on that date, a Saturday, he and his nephew delivered a van to Dee Leasing at about 9:30 a.m. and noticed the front door of the business was open. Engh's nephew notified the police after observing that no one was inside the business, the door looked like it had been forced open, and the telephone was dead. Upon investigation, the police discovered several pried-open doors, cut telephone lines (which disabled the alarm), and, of all things, fresh human feces on the floor. Donald Kaufer, Dee Leasing's owner, later calculated that about $14,000 worth of equipment had been stolen or damaged.

Earlier that morning, at about 9:20 a.m., Larry Olson, owner of the On & Off Roadhouse located next to Dee Leasing, stopped at his store before going to Bountiful. While there he saw a white pickup truck, which he had not seen before, parked next to Dee Leasing. He noticed a logo on the truck's side, which he thought said "Custom Installations," though he later told police it could have had something to do with "insulation." Olson saw defendant, a smaller individual with a receding hair line, standing next to the truck, and at times he "had eye-to-eye contact" with defendant. At trial, Olson could not remember whether he noticed defendant loading any boxes into the truck, although immediately after the crime occurred, Olson reported that the person he saw was loading boxes.

After returning from Bountiful, Olson saw police in front of Dee Leasing. He walked over and gave the police a statement, including a description of the person he saw by the truck. Two months later, an officer showed Olson photographs of several individuals, and Olson immediately identified defendant as the person he saw at Dee Leasing the morning of the burglary. The photos were admitted into evidence at trial.

Believing the burglar was someone who knew the business's layout and contents, the police read Kaufer, the owner, a description of the suspect and asked him to think about any customer or supplier who might fit the description. Kaufer responded, "That sounds like Norm Haga." Defendant Haga had purchased computer supplies from Dee Leasing and, about one year before the burglary, had repaired a unique power supply on one of the computers in Dee Leasing's inventory. Kaufer did not ask defendant to repair

any other equipment because he had an "uncomfortable feeling" about him.

Less than two months after the burglary, a police officer on routine patrol saw a truck fitting the description of the pickup at the burglary scene and with the words "Intermountain Installers" on the side. The truck was broken down in a parking lot, and defendant, who admitted the truck was his, was working on it. Defendant was arrested.

At trial, Richard Perry testified that defendant was at his place of business, A & P Tire and Oil, from 9:00 a.m. to 9:00 p.m. on the date of the burglary. Perry testified that defendant was never gone for more than 15 minutes during the day and that he had been limping from a foot injury. Perry admitted that in 1986 he was convicted of both theft by receiving and attempted homicide.

A jury convicted defendant of burglary, a third degree felony, and theft, a second degree felony. At his sentencing hearing, in addition to imposing prison terms for the felonies, the trial court also imposed restitution in the amount of $13,630, apparently payable to Dee Leasing's insurer, and fines totaling $15,000, plus applicable surcharges. Defendant requested a restitution hearing and the court informed him he could have one. However, no hearing was ever held.

## ISSUES

Defendant claims several instances of prosecutorial misconduct deprived him of a fair trial. He also contends that his trial counsel ineffectively assisted him in a variety of ways. Finally, defendant argues that an insurance company is not a victim and is therefore not entitled to restitution.

1. The following dialogue exemplifies defendant's concerns:

Q Did you buy any computer equipment from [defendant]?
A No.
Q Did you at any time buy any computer equipment from [defendant]?
A No.
Q Any disks?
A No.
Q Any other components that would be associated with a computer?
A I have a keyboard that belongs to [defendant], and he has my other one that he is supposed to be repairing it.

## PROSECUTORIAL MISCONDUCT

◼ Prosecutorial misconduct requires reversal where (1) the prosecutor's "remarks ' " 'called to the jurors' attention matters which they would not be justified in considering in reaching a verdict' " ' " and (2) such remarks were harmful. *State v. Emmett,* 839 P.2d 781, 785 (Utah 1992) (citations omitted). *See State v. Winward,* 941 P.2d 627, 632 (Utah Ct.App.1997).

◼ First, defendant contends that the prosecutor committed misconduct by asking Perry, defendant's alibi witness, if he had ever purchased computer equipment from defendant and whether the equipment had been stolen.[1] " '[I]t is improper conduct for the Government to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth.' " *Winward,* 941 P.2d at 632 (quoting *United States v. Harris,* 542 F.2d 1283, 1307 (7th Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977)). At the same time, the rules of evidence allow questioning, for impeachment purposes, about a witness's "bias, prejudice or any motive to misrepresent." Utah R. Evid. 608(c). If defendant had been selling stolen goods to him, Perry would indeed have had a "motive to misrepresent."

In this case, the prosecutor had " 'reason to believe that there [was] a foundation of truth' " on which to ask Perry if he had bought stolen goods from defendant, *Winward,* 941 P.2d at 627 (quoting *Harris,* 542 F.2d at 1307), and thus, the prosecutor properly pursued his inquiry about Perry's possible motive to misrepresent. First, Perry had

Q When did you get a keyboard from [defendant]?
A Two months ago.
Q Did you ever check to see if it had a serial number?
A Yes, it does.
Q Did you attempt to ascertain whether or not it had been stolen?
A I didn't ask him that, no.
. . . .
Q Are you still using it?
A Yes, I am.

received a computer keyboard from defendant, and the two had an on-going business relationship. Second, Perry had been convicted of receiving stolen goods. Third, defendant was charged with stealing computer equipment. And fourth, compelling evidence placed defendant at the crime scene, making any alibi somewhat suspect. These factors, of course, do not establish Perry's culpability, but they do prompt one to legitimately wonder if Perry and defendant were somehow in cahoots. Thus, the prosecutor's examination of Perry fell within the permissible bounds of prosecutorial conduct and of Utah Rule of Evidence 608(c).

■■■ Second, defendant contends that the prosecutor misbehaved by arguing Perry's felony conviction "substantively" in closing argument. In support of this contention, defendant relies on *State v. Emmett*, 839 P.2d 781 (Utah 1992), which states "it is well established that under Utah Rules of Evidence 404 and 609, past criminal convictions are only admissible for the limited purpose of attacking the credibility of defendant and should not be used as substantive evidence of guilt." *Id.* at 785–86. If defendant was concerned about how the prosecutor was using Perry's convictions in closing, he should have interposed an objection. He did not do so. Defendant asserts we should nonetheless consider the matter as "plain error." To establish plain error, the appellant must

show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

We hold that, under the first prong of the plain error test, there was no error. After reviewing closing argument, we conclude that the prosecutor, although rambling and unfocused, did not use Perry's felony conviction substantively; rather, he used it to undermine the credibility of the defense's chief alibi witness.[2] In closing argument, the prosecutor compared the credibility of the owner of Dee Leasing with Perry's credibility and emphasized that Perry had been convicted of theft by receiving. This was clearly proper. *See* Utah R. Evid. 609(a)(2) ("For the purposes of attacking the credibility of a witness, ... evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."). Then, the prosecutor suggested a scenario in which Perry may have bought stolen equipment from defendant which, as we explain above, was within the limits of prosecutorial advocacy.[3]

■■■ Third, defendant claims prosecutorial misconduct based on the prosecutor's questions to Perry and other witnesses about their failure to come forward with their alibi information before being called as witnesses.[4]

---

2. In closing, the prosecutor stated:

> [Defense counsel] wants you to be cynical about Mr. Kaufer who is not a convicted felon, and yet he wants you to have all the trust for him, with Mr. Perry who is. That's ludicrous. And, yes, a felony conviction, particularly when it's theft by receiving, is something you can consider on an alibi witness. And it's the same Rick Perry alibi, convicted felony witness who apparently isn't too careful that's he's buying computer components from people who aren't even in the business of selling, a friend. I asked Paul, whoever it was, I asked is Paul in the wholesale/retail business? No, he's somebody who came in the store and I bought it. Well, are his parts hot, too? And that takes place, ladies and gentleman. There's a whole black market situation going on. If you read the paper this weekend the Soviet Union, Russian General selling black market parts. It's a whole enterprise that goes on. That's why people steal and fence stolen property, to make money in their business, whatever.

3. Defendant also contends, in a single sentence in a footnote to his brief, that his trial counsel was ineffective for failing to object to the "misuse" of Perry's prior conviction. However, we will not address this issue because defendant failed to adequately brief it. *See* Utah R.App. P. 24.

4. An example of the cross-examination to which defendant objects follows:

> Prosecutor: Did you at any time attempt to go to the police or advise the police of what was asked—
> Defense Counsel: Your Honor, we have already discussed this. He doesn't have a duty to go to the police.
> Prosecutor: I agree. I'm not alleging that he does.
> The Court: You may answer.
> [Perry]: What?
> Prosecutor: Did you ever advise any police agency, once you knew [defendant] had been arrested that in fact he might have an alibi?
> [Perry]: No.

Defendant argues that these questions by the State were meant to imply that the witnesses fabricated their alibi testimony.[5] Such insinuation, defendant contends, is improper because alibi witnesses have no duty to come forward during the course of a criminal investigation and share their information with the police. The State distinguishes several of defendant's cases in support of this proposition and provides other cases where it was held that such questions are a legitimate area of cross-examination.[6] Neither party cites a Utah case in support of its argument.

A recent Kansas case, not cited by either party, examines the same issue. In *State v. Miller*, 259 Kan. 478, 912 P.2d 722 (1996), the prosecutor established, in cross-examination, that two of the defendant's alibi witnesses had not come forward with their stories until several months after the defendant's arrest. *See id.*, 912 P.2d at 726. The Kansas Supreme Court held that "[w]hile it is true a defendant is under no obligation to present evidence in his defense prior to the time of trial, it is not improper for the prosecution to test the credibility of an alibi by noting the alibi witnesses' delay in coming forward to exonerate the defendant." *Id.* at 726. In support of its holding, the *Miller* court cited a 1964 Utah case, *State v. Brown*, 16 Utah 2d 57, 395 P.2d 727 (1964).

In *Brown*, the defendant's original conviction for rape was reversed and his case remanded because, in violation of the marital privilege, the prosecutor commented on the failure of the defendant's wife to take the stand in support of his alibi. In the second trial, the defendant's wife did testify and was cross-examined by the prosecutor about her failure to testify in the first trial. In affirming the defendant's conviction, the Utah Supreme Court stated:

> It is also in accord with human experience that if a person knows facts which would tend to protect others whose interests are in hazard, particularly members of his own family, he will generally speak up when opportunity is afforded and offer the protection rather than to remain silent and withhold it. Accordingly, when a person claims to have such exculpatory information and remains silent when it would be natural to expect that persons of normal sensibilities and concern for others would speak, that fact may be shown as having a bearing on the credibility of the witness and upon the existence or nonexistence of the facts the witness later comes forward to assert.

*Brown*, 16 Utah 2d at 60, 395 P.2d at 729. *See also Davis v. State*, 344 Md. 331, 686 A.2d 1083, 1087 (1996) (citing *Brown* for this same proposition).

Thus, following the logic of *Brown* and *Miller*, we hold that an alibi witness may be cross-examined about his or her failure to come forward with such important information before trial. Accordingly, the prosecutor's cross-examination of defendant's alibi witnesses along those lines was valid.[7]

## INEFFECTIVE ASSISTANCE OF COUNSEL

To show ineffective assistance of counsel, defendant must show that (1) his

---

**5.** Defendant cites to four cases condemning this type of inquiry: *People v. Kraai*, 92 Mich.App. 398, 285 N.W.2d 309, 315–16 (1979); *People v. Costales*, 87 A.D.2d 635, 448 N.Y.S.2d 223, 223 (1982); *People v. Hamlin*, 58 A.D.2d 631, 395 N.Y.S.2d 679, 680–81 (1977); and *Eberhart v. State*, 727 P.2d 1374, 1378 (Okla.Crim.App. 1986).

**6.** The State cites two cases from Rhode Island in support of its position: *State v. D'Agostino*, 691 A.2d 561, 563 (R.I.1997) (per curiam) (The "purpose of state's cross-examination was to suggest that their alibi testimony had been recently fabricated.... This was entirely proper.") and *State v. Gizzarelli*, 651 A.2d 724, 725 (R.I.1994) (per curiam). Other cases have also validated the practice. *See, e.g., Peterson v. State*, 166 Ga.App. 719, 305 S.E.2d 447, 449 (1983); *Williams v. State*, 99 Md.App. 711, 639 A.2d 180, 184 (1994),

*aff'd*, 344 Md. 358, 686 A.2d 1096 (1996); *People v. Phillips*, 217 Mich.App. 489, 552 N.W.2d 487, 490–91 (1996), *appeal denied*, —— Mich. ——, 568 N.W.2d 683 (1997); *People v. Colarco*, 68 A.D.2d 430, 417 N.Y.S.2d 681, 682 (1979).

**7.** Of course, the witnesses are not helpless to explain their actions and the prosecution will often get nowhere with such an inquiry. The prosecutor's thrust will be effectively deflected in the many cases where nonfamily alibi witnesses did not even know the defendant was in trouble with the law until shortly before trial, or where witnesses did not know which police agency to contact, or did not wish to get involved and risk disruption of their own lives, or, worse yet, where witnesses received a deaf ear or bureaucratic run-around when they tried to tell their unsolicited stories at the police station.

lawyer's performance was deficient in that it fell below an objective standard of reasonableness and (2) "there is a reasonable probability that the outcome of the trial would have been different" had counsel not performed deficiently. *State v. Hovater,* 914 P.2d 37, 39 (Utah 1996). Additionally, "[t]o prevail on a claim of ineffective assistance, appellant must demonstrate ' "that counsel's actions were not conscious trial strategy," ' and 'that there was a lack of any conceivable tactical basis for counsel's actions.' " *State v. Winward,* 941 P.2d 627, 635 (Utah Ct.App. 1997) (citations omitted).

Defendant challenges his trial counsel's failure to object to the following in the prosecutor's closing argument: (1) the prosecutor's reference to Kaufer's testimony that he "didn't have a good feeling" about defendant; (2) the prosecutor's statement, "I have never seen a photo line-up as good as that one in terms of finding look-a-likes to Mr. Haga;" and (3) the prosecutor's statement in rebuttal, "[a] common ploy of defense attorneys is to try to discredit the victim." Defendant also claims ineffective assistance for his trial counsel's failure to apprise the jury that Olson had seen a photo of defendant before trial,[8] albeit after he had already properly identified defendant using the photo spread.[9]

Each of these statements may be objectionable, but we cannot say that counsel's decision not to object had no conceivable basis in sound trial tactics. Counsel may have perceived that two of the prosecutor's statements were testimonial, which the jury would be told to disregard, and that objecting would only call attention to them and suggest they were damaging when counsel felt they were not. With regard to the prosecutor's first two statements, counsel may have hoped that by not objecting, she would thus set a tone for argument that would permit her the same latitude in her argument that the prosecutor had taken in his. Finally, counsel may have sensed that the jury was weary and inattentive to the prosecutor and that objecting would only serve to focus

their attention on his remarks or, alternatively, result in some antipathy to the defense if the jury perceived that counsel's repeated objections were only prolonging the proceedings.

Given the availability of tactical reasons for defense counsel's failure to object, we cannot conclude that defendant has demonstrated that his trial counsel was ineffective.

## RESTITUTION

■ Finally, defendant argues that the trial court erroneously ordered defendant to pay the victim's insurance company $13,630 in restitution. Defendant contends that an insurance company is not a "victim" under Utah Code Ann. § 76–3–201(4)(a)(i) (1995), and thus, the trial court was without statutory authority to order that restitution be paid to the insurance company.

■ The State concedes that pursuant to section 76–3–201(4)(a)(i) as currently written, an insurance company is not a victim for restitution purposes when its loss is due only to its payments to a victim-insured. *See State v. Westerman,* 945 P.2d 695, 697 (Utah Ct.App.1997). However, nowhere in the record does the trial court specifically order that the restitution be paid to defendant's insurance company. Indeed, at the sentencing hearing, the judge mentioned no recipient for the restitution, and the judgment and commitment also identifies no recipient.

In any event, there is a more basic problem with the restitution order in this case. Although defendant requested a restitution hearing at his sentencing, he never received such a hearing. Thus, in accordance with section 76–3–201(4)(e), we remand to the trial court to hold the required restitution hearing and to enter such order thereon as may be appropriate.

---

8. The police sent Olson the photograph because someone had rigged a pipe bomb to the door of his business and defendant was a suspect.

9. Defendant also claims that his trial counsel erred by not asking for a continuance in light of the State's purported failure to provide the discovery he needed. However, it appears from the record that defendant's trial counsel did ask for such a continuance and was denied.

## CONCLUSION

For the forgoing reasons, we conclude that defendant has failed to establish prosecutorial misconduct and ineffective assistance of counsel. We remand to the trial court to hold a restitution hearing and enter an order based thereon. Otherwise, we affirm defendant's convictions for burglary and theft.

DAVIS, P.J., and JACKSON, J., concur.