No. 48,427

State of Kansas, *Appellee,* v. James Dennis Jackson, *Appellant.*

(565 P.2d 278)

Opinion filed June 11, 1977.

*Willard L. Thompson, Jr.,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is a direct appeal from a jury conviction of two counts of burglary (K.S.A. 21-3715) and two counts of theft (K.S.A. 21-3701).

The crimes took place at the Kechi Drilling Company, Inc., located in North Wichita, Kansas. The first burglary occurred on or about February 8, 1974; the second, on or about June 7, 1974. Losses from the first burglary included currency, a large number of quarters taken from two antique slot machines, an antique German pendulum clock, a battery charger and two antique bottles. Items taken in the second burglary included a magnetometer, a knife, a pair of binoculars, two antique slot machines,

and approximately $500.00 in currency and between $200.00 and $300.00 in coins.

As a result of an investigation by the Sedgwick County sheriff's office, defendant was arrested and charged with the burglaries and thefts. Although many items were taken, defendant was charged only with theft of the clock and money in the first burglary, and theft of the two slot machines, the magnetometer and money in the second burglary.

The victims of the crimes were W. P. Simmons and his wife, Frances. Simmons was a geologist and president of Kechi Drilling. Frances was the bookkeeper and office manager. Both testified they were personally acquainted with defendant as he had been a friend of their son, Mike. Occasionally, defendant would come to the office looking for Mike. On February 7, 1974, defendant was in the office and he saw Frances take fifty dollars from a desk drawer to give to an employee for expenses. Prior to that time only Mr. and Mrs. Simmons knew cash was kept in the desk.

The burglary was discovered the next morning. Entry had been gained by forcing a side door. Cash had been taken from the desk drawer, and a large number of quarters was taken from two antique slot machines in which glass had been broken. The cash and quarters totaled approximately $300.00. The Simmonses later missed a German pendulum clock, a battery charger and two antique bottles.

On June 7, 1974, the office was again burglarized. Both doors to the office were open and the office was in disarray. Approximately $500.00 was taken from the desk. Two jars of coins containing between $200.00 and $300.00 were missing. The two slot machines pilfered in the first burglary were now gone. In addition, a pair of binoculars, a knife, and a magnetometer valued at $2,500 were missing.

Simmons described some of the items taken in the burglaries. The slot machines were antiques made of wood. On the front of one machine, written on masking tape, was the legend, "Jackpot pays twenty dollars." The German clock was gold in color and had a pendulum drive, but it wouldn't keep time. In addition to other items taken, Simmons discovered that a small black television set with a three-inch screen was missing. He was not certain when it was taken.

Frances Simmons testified she thought defendant had commit-

ted the burglaries. Shortly after the first burglary she confronted defendant by showing him the pry marks made on the door when entry was gained. She testified that he became extremely nervous, slammed the door and left. Despite their suspicions about defendant, they hired him as a roughneck in April, 1974. In the latter part of the month Frances again questioned defendant about items missing from the office. He denied wrongdoing and told her his roommate had taken them. Shortly thereafter defendant quit his job.

Defendant's roommate, Markie Rice, testified for the state. He stated that defendant showed him an inoperable antique German pendulum clock on February 8, 1974. When asked where the clock came from defendant implied it was stolen. Rice stated he didn't want it kept in the house so he and defendant took it to an antique shop and sold it. Rice further testified that after they sold the clock defendant stated he knew of a drilling company that had two antique slot machines.

The state also called Ronald Watson, manager of a Wichita nightclub. He testified that he knew defendant and that he purchased a large number of quarters from defendant in February, 1974. Defendant also attempted to sell him a small black television set. About midnight of June 8, 1974, defendant returned to the nightclub and offered to sell Watson a slot machine which he had in his car. Watson looked at the machine and noticed that it had "Twenty Dollar Limit Jackpot" written on it. He did not buy the machine. A few days later defendant returned to the club and sold the witness a large number of dimes and quarters.

Defendant called his wife, Mary Katherine Jackson. She testified that she worked as a waitress for a year preceding the first burglary and until April, 1974. During that time she collected her tips and put them in a bottle. In February, 1974, she gave the change to defendant and had him exchange it for currency at the club managed by Watson.

On cross-examination, Mary Jackson stated that her husband was at home with her on the night of June 7. She was asked why she had never previously told anyone that she collected tips and had given them to defendant to cash. She answered that she had never heard anything about coins being important until the trial. At this point the state called Detective Goddard of the sheriff's office. He testified that he questioned Mary shortly after the June

burglary. At that time she told him defendant had left and she had not seen him since the afternoon of June 7. The officer further stated that he asked her about several of the items taken in the burglaries, including the coins, the magnetometer and the slot machines. She made no comment about the coins at that time, but did tell the detective the slot machines had been sold and the magnetometer had been thrown into a river.

The jury found defendant guilty as charged.

Defendant sets forth twenty points in his statement of points on appeal. For purposes of this opinion we have realigned them into five topics.

I. Admitting Evidence of Other Crimes

Defendant's first argument concerns testimony about the theft of items taken for which defendant was not charged. This included the theft of a pair of binoculars, the battery charger, two antique bottles and a hunting knife. He alleges this violates K.S.A. 60-455. The argument has no merit. The items discussed by the witnesses were all taken in the burglaries; thus, part of the *res gestae* and admissible. (*State v. Platz,* 214 Kan. 74, 519 P. 2d 1097.) Since they were evidence of the crime charged and not of another crime, 60-455 is inapplicable.

A similar argument is made with respect to the introduction of the loss of the television set. Defendant argues it was evidence of a later crime and inadmissible. The Simmonses testified the set disappeared sometime prior to the June 8th burglary. The record does not disclose whether it was taken during the February break-in or subsequent thereto. If the set was taken during the first burglary the evidence was admissible for the reasons set forth in the preceding paragraph. If it was taken at a later time the evidence was admissible under 60-455 to show identity and plan of operation. Evidence of the theft of the television set and defendant's later possession of it was admissible in either event. (*State v. Crowe,* 207 Kan. 473, 486 P. 2d 503. See also, *State v. Moore,* 218 Kan. 450, 543 P. 2d 923; *State v. Winston,* 214 Kan. 525, 520 P. 2d 1204.)

Defendant also complains of the state's use of a guilty plea to prior charges of theft. Defendant's father owned a Universal service station. Defendant found a key at the station which unlocked another Universal station. After looking the place over, he entered it at night and removed money. At his plea hearing he

admitted it was so easily done that he continued to break in until he was caught. After proper hearing and over objection of counsel the trial court admitted the conviction to show plan of operation and identity. A limiting instruction was given.

Applying the principles set forth in our prior cases discussing 60-455, we find no abuse of discretion on the part of the trial court. The record of the hearing indicated factual similarity of the offenses in four respects. First, both offenses were unlawful entries and thefts. Second, in both cases a business was involved. Third, both crimes were committed after defendant studied and became familiar with the premises and knew where the money was kept. Finally, he repeatedly committed crimes upon both premises until he was caught. These facts are sufficient to demonstrate a pattern of similarity which was relevant to the issue of identity and plan of operation. (*State v. Wasinger,* 220 Kan. 599, 556 P. 2d 189; *State v. Howard,* 220 Kan. 117, 551 P. 2d 835; *State v. Donnelson,* 219 Kan. 772, 549 P. 2d 964.)

Finally, defendant challenges the sufficiency of his identification as the defendant in the prior theft convictions. The state introduced defendant's prior convictions through the use of judicial notice of the district court file. In order to establish identity the state called a jailer who would match fingerprints on defendant's booking sheet on the present charge. When the jailer attempted to offer his opinion, defendant objected. The court in an abundance of caution then ordered defendant to be taken to the jail and immediately re-fingerprinted. The officer taking the prints then took the stand and compared the fingerprints from the prior convictions file, the booking sheet, and the defendant, and stated they were all from the same person. The process used rendered the previous convictions admissible. It was the function of the jury to determine the weight and credibility to be given to the identification process.

II. Recalling Witness

Frances Simmons took the stand for the state on two occasions. At her first appearance she testified about her contacts with defendant and the losses from the burglaries. When she was recalled she was able to give more specific information about the money and property taken. She also testified about two conversations with defendant which she had forgotten while on the stand the previous day. On cross-examination she stated she had been

nervous and excited on the first day and consequently became confused. At the conclusion of court she talked with her husband, with Detective Goddard, and with the prosecutor concerning her initial testimony, then went home and reviewed her notes.

Defendant moved to have her entire testimony stricken because she had been assisted. He now assigns this as a ground for error. It is entirely proper for a prosecutor to acquaint a witness with courtroom procedure and to review testimony, and he may assist the witness in recalling testimony. (*State v. Collins,* 204 Kan. 55, 460 P. 2d 573; *State v. Kimmel,* 202 Kan. 303, 448 P. 2d 19.) It was not error to permit the witness to be recalled to correct or add to her testimony. In *State v. Greenwood,* 197 Kan. 676, 421 P. 2d 24, this court stated:

". . . The object of any trial is a search for the truth. If a witness has time to reflect as to what he has testified to and then decides in good conscience that his testimony should be changed, the court has the discretion of allowing him to change his testimony. . . ." (p. 684.)

Defendant also argues the testimony should be stricken as repetitious. There is no merit to this argument. Defendant objected on this basis on several occasions at trial and was sustained by the trial court. The remainder of the testimony was admitted without objection.

III. Impeaching Defendant's Wife

Although defendant did not testify, he presented his defense through the testimony of his wife. The state impeached her credibility through cross-examination and the use of a rebuttal witness. Defendant now claims both practices were improper.

Defendant first claims the cross-examination was improper because it exceeded the scope of direct examination. The record reveals the only objection by defendant to the state's cross-examination was when defendant's wife was questioned about collecting tips; thus, the questions asked by the prosecutor, to which there was no objection, are now beyond our scope of review. (K.S.A. 60-404; *Baker v. State,* 204 Kan. 607, 464 P. 2d 212.)

Defendant also objects to the state's effort to impeach defendant's wife concerning her explanation of how defendant came into possession of the large number of coins he sold to Ronald Watson. This was proper as it tested the credibility of her story. While it is generally true that a defendant is under no obligation to present evidence in his defense prior to time of trial, it does

seem natural that a person who knew facts which would protect a defendant, particularly a family member, would come forward when the opportunity existed rather than remain silent. (*State v. Brown,* 16 Utah 2d 57, 395 P. 2d 727 [1964].) This silence raises proper concern for the credibility of the story and is a proper subject of inquiry. (98 C.J.S., Witnesses, Sec. 464, p. 334.) This is particularly true when evidence reveals the witness talked with law enforcement officials and remained silent when the subject matter of her later testimony was discussed with her.

Finally, defendant objects to the use of the rebuttal testimony of Detective Goddard. First, the matter is not properly preserved for review because defendant made no objection to the testimony at trial. (K.S.A. 60-404; *Baker v. State,* supra.) Second, the rebuttal testimony was proper. Rebuttal evidence is proper to deny some matter an adverse party has attempted to prove or to complete the impeachment of a witness. (*State v. Burnett,* 221 Kan. 40, 558 P. 2d 1087; *State v. Norwood,* 217 Kan. 150, 535 P. 2d 996; *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. denied, 384 U.S. 1025, 16 L. Ed. 2d 1030, 86 S.Ct. 1981.) The state used Detective Goddard to contradict statements made by Mary Jackson and to impeach her credibility. On cross-examination she stated defendant was home with her on the nights of June 7 and 8. Detective Goddard testified she had previously told him she had not seen defendant since the afternoon of June 7. The detective further stated that he discussed the coins with her in June, 1974. This directly refuted her contention that no one ever told her the importance of the coins until the day before she testified at trial.

IV. Prosecutor's Remarks

Defendant argues the prosecutor was guilty of misconduct throughout the course of trial. Most of the alleged instances of misconduct have previously been found to be groundless; therefore, the only issue to be discussed here will be a remark made by the prosecutor during opening statement.

During the course of opening statements the prosecutor told the jury he would introduce a prior conviction of defendant through the testimony of a parole officer. The parole officer never testified. Defendant alleges the remark was made to purposefully prejudice the jury.

This court has consistently held that a prosecuting attorney is allowed reasonable latitude in stating to the jury the facts he

proposes to prove. (*State v. Wasinger*, supra; *State v. McCollum*, 211 Kan. 631, 507 P. 2d 196; *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21; *State v. Miller*, 204 Kan. 46, 460 P. 2d 564.) It is only when the prosecutor acts in bad faith and substantial prejudice results that appellate courts act. Here there was no prejudice in the statement. The record reveals the prior conviction was admitted into evidence. When evidence of a prior conviction is admissible under K.S.A. 60-455, the prosecutor may make reference to it in his opening statement. (*State v. Wasinger*, supra; *State v. Miller*, supra.)

V. Instructions

Defendant argues with the wording in the trial court's instruction on the law of possession of recently stolen property. The court instructed that the jury may "infer" the defendant committed the burglary and theft because he possessed recently stolen property. Defendant argues the word "believe" should have been used. The instruction given by the trial court correctly states the law on possession of recently stolen property. (See, *State V. Atkinson*, 215 Kan. 139, 523 P.2d 737.)

All points raised by defendant have been considered and found to be without merit. The judgment of the trial court is affirmed.