No. 63,653

STATE OF KANSAS, *Appellee*, v. NASIF GADELKARIM, *Appellant.*

(802 P.2d 507)

Opinion filed December 7, 1990.

*Rick Kittel,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Bruce L. Stewart,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Nasif Gadelkarim was convicted of first-degree murder (K.S.A. 21-3401) and unlawful possession of a firearm (K.S.A. 21-4204). Gadelkarim was sentenced to life imprisonment on the murder conviction and three to ten years' imprisonment for the

unlawful possession of a firearm charge. The sentences run consecutive to each other and consecutive to any sentence imposed in a prior pending case.

The facts are as follows: On December 3, 1988, at 7:36 a.m., Gadelkarim called the Emergency Communication Services of Sedgwick County. He told the dispatcher he had killed his girlfriend and wanted someone to come and get him. At trial, Gadelkarim testified he drank one-half bottle of vodka and one-half bottle of rum between 1:00 p.m. and 9:00 p.m. on Saturday, December 2. On Saturday evening Gadelkarim and his girlfriend, Debbie Cagel, drove from Clearwater to Wichita to purchase supplies for the restaurant they owned. Gadelkarim stated he drank another large rum beverage on the trip to Wichita. Upon returning to Clearwater, Gadelkarim and Cagel went to Roger's Place, a local bar, where Gadelkarim drank five to six Scotch beverages. Gadelkarim testified he did not remember paying the bar tab but was tired and walked home, leaving Cagel to play pool with another bar patron. Gadelkarim stated he went to sleep on a hide-a-bed in the living room and did not hear or remember anything until Sunday morning, when he was awakened by the restaurant waitress knocking on the front door. Gadelkarim told the waitress Cagel would soon be at the restaurant to open up. Gadelkarim stated he looked in the bedroom and bathroom before finding Cagel face down on the living room floor. At trial, Gadelkarim testified he told police on December 3 that he killed Cagel because he did not want to live without her. Gadelkarim also testified, however, that he could not remember telling anyone he killed Cagel because he was still drunk.

Joseph Pierce, the owner of Roger's Place, testified that Gadelkarim and Cagel arrived at the bar around midnight on December 2. Gadelkarim drank five one and one-half ounce Scotch and waters while Cagel drank Bloody Marys. Before leaving, Gadelkarim tipped the bartender and handed out dollar bills to several women sitting at the bar. Cagel collected the money from the women, but this irritated Gadelkarim and he threw more money on the bar. Cagel eventually collected the dollar bills and the couple left together.

Gadelkarim was arrested on Sunday, December 3. Several officers testified to the incriminating statements made by Gadel-

karim. Officer Koch testified that Gadelkarim said, "I shot Debbie, I shot the bitch." Koch also stated Gadelkarim appeared to have been drinking, but had no difficulty with movements and did not smell of alcohol. Gadelkarim told another officer he did it and he meant to do it. Gadelkarim told yet another officer that it all started when he and Cagel went to Roger's Place and Cagel took back the money he had given to several women. Gadelkarim told the officer he did it because he was innocent of a prior conviction of molesting the decedent's son.

A Breathalyzer test was performed at 11:12 a.m. on December 3. The test revealed Gadelkarim's blood alcohol concentration was .169. While at the police station, Gadelkarim told Officer Smith, "[L]ook at me nice and easy, I shot the bitch." Gadelkarim also told Smith that Cagel had made him "crazy".

Cagel was found face down, in a kneeling position, wedged between a chair and a hide-a-bed. She had suffered two gunshot wounds. The residence was in disorder and several empty bottles of various liquors were found in the kitchen. Evidence indicated the bullet found in Cagel's body was fired from a .38 caliber Rossi revolver found in the residence.

Gadelkarim was convicted as previously set out. He appeals.

We consider Gadelkarim's first argument that the trial court committed reversible error in refusing to give an instruction on voluntary intoxication.

Gadelkarim's primary defense at trial was that he did not commit the murder. Therefore, Gadelkarim sought a jury instruction on first-degree murder only. If, however, the trial court gave instructions on any other lesser included offenses, then Gadelkarim requested an instruction on voluntary intoxication. Since the trial court did in fact give jury instructions on first-degree murder and second-degree murder, a lesser included offense, Gadelkarim contends it was error not to provide a jury instruction on voluntary intoxication.

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Where the crime charged requires specific intent, voluntary intoxication may be relied on as a defense and an instruction thereon is required if there is evidence to support the defense. *State v. Keeler*, 238 Kan. 356, 360, 710 P.2d 1279 (1985); *State v. Sterling*, 235 Kan. 526, Syl. ¶ 2, 680 P.2d 301 (1984); *State v. Rumble*, 81 Kan. 17, 211, 105 Pac. 1 (1909). It is not error, however, to refuse to give a voluntary intoxication instruction where there is not sufficient evidence to submit the issue of intoxication to the jury. See *State v. Shehan*, 242 Kan. 127, 131-32, 744 P.2d 824 (1987). Thus, unless evidence is presented to the jury that shows the defendant was intoxicated to the extent his ability to form the requisite intent was impaired, no voluntary intoxication instruction is required. Statements of an accused can negate testimony about consumption of alcohol and thus justify a court's refusal to instruct on voluntary intoxication. *State v. Payton*, 229 Kan. 106, 114, 622 P.2d 651 (1981).

In *Payton*, the defendant was convicted of felony murder and attempted aggravated robbery. The defendant testified he consumed considerable amounts of alcohol and became intoxicated on the day the crimes were committed. The defendant also described the events of the day leading up to the crime and described in detail conversations he held just prior to the criminal events. 229 Kan. at 113. We ruled the defendant's confession disclosed that his mental capacity was not significantly impaired and therefore it was not error to refuse to give a voluntary intoxication instruction. 229 Kan. at 113-14.

In *State v. Carr*, 230 Kan. 322, 634 P.2d 1104 (1981), conflicting evidence on the level of the defendant's intoxication was presented. Two witnesses testified the defendant lost control of his physical movements and passed out but the arresting officer testified the defendant knew his apartment number and the apartment number of the leasing agent and had no problems walking or talking. A voluntary intoxication instruction was given to the jury and we ruled the conflicting testimony provided sufficient evidence for a rational factfinder to find beyond a reasonable doubt the defendant was not so intoxicated he could not form the specific intent to commit the crimes charged. 230 Kan. at 326-27.

Thus, the issue we address in the case at hand is whether sufficient evidence was presented upon which the jury might find Gadelkarim's mental faculties were impaired to the extent he was incapable of forming the necessary requisite intent for murder.

Gadelkarim testified he consumed large quantities of alcohol on December 2 and 3 and that he could not remember anything after walking home from the local bar and going to sleep on the hide-a-bed. In addition, Gadelkarim claimed he did not remember the incriminating statements made to police officers on December 3. Finally, there was evidence Gadelkarim's blood alcohol concentration registered .169 at 11:00 a.m. on December 3.

On the other hand, Gadelkarim clearly remembered the events of the day prior to Cagel's death. He remembered napping and watching television the afternoon of December 2. Gadelkarim knew he gave the restaurant cook $85.00 in exchange for title to the cook's pickup truck. He clearly remembered the trip to Wichita with Cagel and their return to Roger's Place. Gadelkarim also remembered that Cagel played two games of pool with "Crazy Ed", and though he claims he does not remember the statement he gave the police, he remembers he called the police on Sunday morning and said he killed Cagel. Finally, we note defense counsel's argument to the trial court that evidence of intoxication was offered solely to explain why Gadelkarim made incriminating statements to the police concerning his failure to hear gunshots while he was sleeping in the house. The evidence was not intended to show Gadelkarim lacked the necessary mental faculties required to form the specific intent to commit murder.

This is a close question, but under the facts presented, we find the trial court erred in refusing to instruct on voluntary intoxication. The evidence is uncontroverted that Gadelkarim was intoxicated when he left Roger's Place on December 3, having drunk a large quantity of alcohol at that time. His blood alcohol concentration was .169 at 11:00 the next morning. Thus, we think a valid question of controverted facts was presented and the jury should have been permitted to consider it. The district court's order refusing to instruct on voluntary intoxication is reversed.

Gadelkarim next contends the trial court erred in failing to instruct the jury on the lesser included offense of voluntary man-

slaughter. Even though the ruling on the forgoing issue calls for a new trial, let us consider this issue for guidance at trial.

As we previously noted, Gadelkarim's primary defense was that he did not commit the crime charged. At trial, Gadelkarim objected to all but a first-degree murder instruction, but he requested that a voluntary manslaughter instruction be given if any lesser included offense instructions were provided. Because a second-degree murder instruction was provided, Gadelkarim alleges error in the refusal to give a jury instruction on voluntary manslaughter. Since Gadelkarim made his objection to the giving of lesser included offense instructions a conditional one, we will treat it as if no objection was made.

K.S.A. 21-3107(3) states:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty . . . ."

Voluntary manslaughter, the unlawful killing of a human being, without malice, which is done intentionally upon sudden quarrel or heat of passion, is a lesser included offense of first-degree murder. K.S.A. 21-3403; *State v. Seelke*, 221 Kan. 672, 675, 561 P.2d 869 (1977). Thus, the trial court had an affirmative duty to instruct on voluntary manslaughter if there was evidence upon which Gadelkarim might reasonably be convicted of the lesser offense. See *State v. Cummings*, 242 Kan. 84, 91, 744 P.2d 858 (1987). The evidence, considered in the light most favorable to the defendant, need not be strong or extensive, but may be weak and inconclusive. 242 Kan. at 91; *State v. Guebara*, 236 Kan. 791, 795, 696 P.2d 381 (1985). If there is no evidence, however, by which the jury might reasonably convict of the lesser crime, the instruction need not be given. *State v. Hill*, 242 Kan. 68, 73-74, 744 P.2d 1228 (1987); *State v. Seelke*, 221 Kan. at 676.

Gadelkarim contends the testimony of Officer Smith provides evidence that he killed Cagel upon a sudden quarrel or heat of passion. Officer Smith stated at trial that he was with Gadelkarim at the Clearwater police station when Gadelkarim stated: "[L]ook at me nice and easy, I shot the bitch. Listen, last night she made me crazy. I tried to get the bitch clean for seven months. I turned myself in because I like Mike." Gadelkarim further stated

to Officer Smith he was insane and did not know what he was doing.

The issue we address is whether Officer Smith's testimony provided sufficient evidence to support a voluntary manslaughter conviction. We do not believe it did.

We have previously defined "heat of passion" as

"any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror. Such emotional state of mind must be of such a degree as would cause an ordinary man to act on impulse without reflection. [Citations omitted.]

"(3) In order to reduce a homicide from murder to voluntary manslaughter there must be provocation, and such provocation must be recognized by the law as adequate. . . .

. . . .

"(5) Mere words or gestures, however insulting, do not constitute adequate provocation, but insulting words when accompanied by other conduct, such as assault, may be considered." *State v. Guebara,* 236 Kan. at 796-97.

See *State v. Hill,* 242 Kan. 68, 74, 744 P.2d 1228 (1987).

Gadelkarim has produced no evidence of provocation that would reduce the murder charge to voluntary manslaughter. A mere statement that the victim made Gadelkarim "crazy" is not evidence of provocation leading to heat of passion or sudden quarrel. Therefore, we find Gadelkarim's argument without merit.

The judgment of the trial court is affirmed in part and reversed in part, and this case is remanded for a new trial.