No. 67,146

STATE OF KANSAS, *Appellee,* v. JOSE M. GONZALES, JR., *Appellant.*

(853 P.2d 644)

Opinion filed May 28, 1993.

*B. Kay Huff,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Rodney H. Symmonds,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Davis, J.: Jose M. Gonzales, Jr., was charged with first-degree murder, tried by jury, and convicted of second-degree murder for the intentional killing of Ernest Lopez. He appeals, contending that the trial court's failure to instruct the jury on voluntary

intoxication requires reversal. He also contends that the trial court erred by allowing the State to recall a witness three times to establish chain of custody of the murder weapon. Finding no reversible error, we affirm.

### Voluntary Intoxication Instruction

Voluntary intoxication is neither an excuse for nor a justification of crime. In specific intent crimes, however, voluntary intoxication may be raised as a defense. See *State v. Sterling*, 235 Kan. 526, Syl. ¶ 2, 680 P.2d 301 (1984). K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Quoting from an early Kansas case, *Sterling* notes that "drunkenness may reduce a homicide from murder to manslaughter, if it is so extreme to prevent the existence of an intention to kill." 235 Kan. at 528.

A defendant is entitled to an instruction on his or her theory of defense if the theory is supported by evidence. At the same time, "there must be evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory." *State v. Seely*, 212 Kan. 195, 197, 510 P.2d 115 (1973). In *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987), we said:

"The degree of proof necessary in Kansas to establish a submissible issue of voluntary intoxication was considered in the recent case of *State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985). The court stated:

'Where the crime charged requires a specific intent, voluntary intoxication may be a defense and an instruction thereon is required where there is evidence to support that defense. [Citation omitted.] *The defendant has the burden of showing that he was so intoxicated that he was robbed of his mental faculties,* and whether he was drunk to such extent is a question for the trier of the facts to decide, under proper instructions. [Citations omitted.]' "

The defendant was charged with a specific intent crime, first-degree murder. The defendant contends he requested an instruction on involuntary intoxication, but the court did not instruct

on this defense. This contention is misleading. When the defendant filed his proposed jury instructions before trial, he included an instruction on voluntary intoxication patterned after PIK Crim. 2d 54.12-A. After the parties rested and during a conference with the court on proposed instructions, the court did not include a voluntary intoxication instruction. Defense counsel voiced no objection to the court's proposed instructions and did not request an instruction on involuntary intoxication.

Under the above circumstances, "[w]hen no request for an instruction on voluntary intoxication is made in a criminal trial, the standard of review on appeal requires reversal only if the trial court's failure to give the instruction was clearly erroneous." *State v. Minski*, 252 Kan. 806, Syl. ¶ 1, 850 P.2d 809 (1993). We held in *Minski* that a duty to instruct on voluntary intoxication arises only when there is evidence of intoxication upon which a jury might find the defendant's mental faculties were impaired to the extent defendant was incapable of forming the necessary specific intent required to commit the crime. *Minski*, 252 Kan. 806, Syl. ¶ 2.

There are several sound reasons for concluding that the defendant was not entitled to an instruction on voluntary intoxication.

First, defendant's theory at trial was one of self-defense, not voluntary intoxication. This perhaps more than anything else accounts for counsel's lack of a request for an instruction on voluntary intoxication. While it is true that a defendant in a criminal case may present and rely upon inconsistent defenses, *State v. Shehan*, 242 Kan. 127, Syl. ¶ 2, the defendant's testimony in support of his theory of self-defense undermines his claim that there was sufficient evidence to warrant the giving of a voluntary intoxication instruction. He recalled in detail his actions well before the stabbing, his contact with the victim, what the victim said to him, and his concern for his own safety. He was able to recount all details of his presence in the bar and the exact actions he took in dealing with and stabbing the victim, and he was able to recount all of those details to the arresting officer shortly after the stabbing. The very credibility of his theory of self-defense depended upon his convincing the jury that he was alert and aware of the danger to himself from the victim.

The evidence on which defendant relies for his intoxication theory was the State's evidence that his blood alcohol concentration within a half-hour after the stabbing was .196. Additionally, there was evidence that defendant had consumed most of two 12-packs of beer between 6:00 p.m. and 10:00 p.m., just before the stabbing. There was evidence that when he was apprehended, he swayed as he walked and stood and that his speech was slurred. At the same time, there was evidence that defendant sharpened the knife before concealing it on his person, went to the bar with the intent to cut or scar the victim, and killed the victim.

The only testimony regarding the effects of alcohol on a person was presented by the State when Dr. Scamman testified that "the way people respond to alcohol varies from person to person." The defendant did not testify that he was intoxicated, and he did not claim that he was confused about the events that occurred. According to his own testimony, there was no loss of memory, and he clearly formed the intent to cut or scar the victim just before and during the stabbing. Under these circumstances, there simply was insufficient evidence to support a finding that his mental faculties were impaired to the extent that he was incapable of forming the necessary specific intent to commit the crime. See *State v. Shehan,* 242 Kan. at 131-32.

In a recent case decided by this court, *State v. Gadelkarim,* 247 Kan. 505, 802 P.2d 507 (1990), we held that it was error for the trial court to have refused to give a voluntary intoxication instruction. The facts in *Gadelkarim* present a more compelling case for the instruction. The defendant, Gadelkarim, testified that he drank one-half bottle of vodka and one-half bottle of rum between 1:00 p.m. and 9:00 p.m. on Saturday. That same evening, the defendant and his girlfriend drove from Clearwater to Wichita, and on the way he drank another large rum beverage. Upon returning to Clearwater, he went to a local bar and drank five to six Scotch beverages. He called the dispatcher the next morning at 7:36 a.m. and said he had killed his girlfriend. A breathalyzer test administered to the defendant at 11:12 a.m. that morning revealed the defendant's blood alcohol concentration was .169.

Gadelkarim testified at trial that he did not recall anything after he walked home from the bar and went to bed. He testified that when he was awakened, he found his girlfriend's body on the living room floor. At trial, he said he told the police he killed her because he did not want to live without her; he also denied, however, remembering that he told anyone he killed her because he was drunk. The defendant told the police at the time of his arrest that he shot his girlfriend and meant to do it.

Under these circumstances, we held that the trial court erred in refusing to instruct on voluntary intoxication. We based our conclusion on the uncontroverted evidence that the defendant was intoxicated when he left the bar and his blood alcohol concentration was .169 at 11:12 a.m. the next morning. We also noted that the defendant claimed he could not remember anything after walking home and going to sleep and could not recall the incriminating statements that he made to the police.

In contrast, the defendant in this case was able to recall in detail all events leading up to the stabbing and the time immediately before and the time he was committing the actual stabbing. He stated that his intent was to cut or scar the victim. He further remembered the exact words of the victim earlier in the evening, and he was alert and aware of the alleged danger the victim posed to him that evening. While we characterized *Gadelkarim* as a close case, 247 Kan. at 509, the evidence in this case clearly establishes that the defendant's mental faculties were not impaired to the extent he was incapable of forming the necessary requisite intent for murder.

### Chain of Custody Evidence

The knife, or murder weapon, was clearly identified at trial and was admissible as evidence without the necessity of establishing a chain of custody. The purpose of establishing a chain of custody was to allow into evidence the testimony of a serologist that the genetic markers of the blood which she identified on the knife were consistent with those of the victim.

The defendant does not claim the evidence was inadmissible because of a failure to establish a proper chain of custody, but he claims that allowing a State's witness to testify three different times in order to fill gaps in the chain of custody encourages

perjury. He further claims that the trial court abused its discretion in allowing the State to recall three times the same witness to establish a proper chain of custody.

The trial court permitted the State to call Detective Delmott to the stand on three occasions to correct gaps in the chain of custody of the knife. The second time Detective Delmott was called as a witness was due to the county attorney's discovery, outside the presence of the jury, that the witness' initial testimony was incorrect. The county attorney requested that he be allowed to recall the witness to clear up the witness' inaccurate testimony. It may be said that the county attorney was duty-bound to recall the witness under these circumstances. Later, the same witness was called again because overnight the witness, having forgotten how he marked the exhibit, remembered and was allowed the next day to testify as to his recollection. On each occasion, the defendant was given an opportunity for cross-examination.

It is not error to permit a witness to be recalled to correct or add to testimony. *State v. Jackson*, 222 Kan. 424, Syl. ¶ 3, 565 P.2d 278 (1977). The object of any trial is a search for the truth, and if a witness has time to reflect and then decides in good conscience that his or her testimony should be changed, the court has discretion to allow the witness to change testimony. *State v. Greenwood*, 197 Kan. 676, 684, 421 P.2d 24 (1966). Finally, our test for abuse of discretion is that if no reasonable person would agree with the trial court, then the court has abused its discretion. If any reasonable person would agree with the trial court, appellate courts will not disturb the trial court's decision. *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988). The trial court did not abuse its discretion in allowing the State to recall Detective Delmott.

Affirmed.