No. 73,349

STATE OF KANSAS, *Appellee*, v. ROBERT O. MILLER, *Appellant*.
(912 P.2d 722)

Opinion filed March 8, 1996.

*Kevin C. Harris*, of Fairway, argued the cause, and *James C. Trickey*, of Overland Park, was with him on the brief for appellant.

*Michael Grosko*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Robert O. Miller appeals his jury conviction of first-degree murder, contending (1) the prosecutor impermissibly commented on his post-arrest silence, (2) the trial court erred in recalling two members of the venire to serve as jurors after two seated jurors had been dismissed, (3) the trial court erred in not declaring a mistrial when the number of jurors fell to 11, (4) the trial court erred in its comments to the jury panel regarding the disposition of other cases, (5) he received ineffective assistance of counsel, and (6) there were cumulative trial irregularities.

We have jurisdiction pursuant to K.S.A. 22-3601(a)(1).

In August 1993, Shawn Haggins was shot to death at close range near a pay telephone at the corner of 18th and Parallel in Kansas City. Miller was charged with the homicide.

At trial, the victim's sister, Shelis Haggins, testified her brother had told her about an earlier fight in which Miller had pulled a gun that Shawn then took away from him. Shawn had described the assailant's car as a gray Buick Park Avenue. Miller was known to drive such a car. Shelis testified her brother had been staying in Missouri because he knew Miller was looking for him.

Shelis also testified about an incident a week before the murder in which she and her boyfriend were stopped by Miller, who was trying to locate her brother. Shelis' boyfriend corroborated her testimony.

LaKetra Williamson provided the principal testimony linking Miller with Haggins' death. She testified Miller was her drug dealer and on the day of the murder she waved him down near 18th and

Quindaro to buy cocaine from him. Because Miller did not want to make the sale in plain view, Williamson got in Miller's car to drive a few blocks away. The sale was completed near 18th and Parallel.

Williamson testified that Miller then told her he saw someone he wanted to talk to at a nearby pay telephone. Williamson saw a black male at the telephone. Williamson testified Miller parked the car, approached the man, and she heard them talking loudly. Miller returned to the car, got in, and bent down for something. While Williamson was using her drugs and walking away, she heard Miller get out of the car and slam the door. She heard the two talking loudly again and then heard two gunshots. By this time she was high and continued to walk away.

Williamson said she told her friend Ronald Dorsey about the incident, but when Dorsey testified, he said that Williamson had said somebody named "Money Mike" or "Mighty Mike" was the person involved.

A witness named M'Sherie Johnson lived some distance away and testified she saw one black man walk over to another who was using a telephone and shoot him. She described the assailant's car as a gray Buick.

Miller's defense was that he had been in St. Louis at the time of the murder and Haggins was likely shot by a man named Michael Shelby, who had an extensive criminal history including a charge of homicide. Miller presented several witnesses who substantiated his alibi and said they had seen him in St. Louis and talked to him by telephone during the time of the shooting.

Miller was convicted and sentenced to life imprisonment. He appeals, raising the issues stated above. We affirm.

*Should Miller be granted a new trial because the prosecutor impermissibly commented on his post-arrest silence?*

Miller alleges the State impermissibly commented on his post-arrest silence both in cross-examination of witnesses, including Miller himself, and in closing argument.

Miller's girlfriend, Michelle Henry, testified that Miller was visiting relatives in St. Louis in August 1993 and that she had con-

tacted him there by telephone. During cross-examination, the prosecutor asked Michelle if she had gone to the police to say Robert could not have done this because he was out of town. She admitted that she had not.

When Miller testified, the prosecutor cross-examined him about when he had first contacted his relatives about his alibi. Miller admitted he had not contacted them until several months after his arrest.

Two of Miller's relatives from St. Louis also testified in support of his alibi. In cross-examination, the prosecutor established that they had not come forward with their story until several months after Miller's arrest.

In closing arguments, the prosecutor asked the jury why there were not any phone records of the alleged calls by the girlfriend to Miller in St. Louis. He further contended the delay in coming forward with the alibi made the alibi witnesses' not credible. He essentially told the jury that the stories were not believable and had been constructed.

Miller did not object either during the cross-examination or during the closing arguments. Failure to object normally precludes consideration of the propriety of the State's cross-examination or closing argument. See *State v. Sexton*, 256 Kan. 344, 363, 886 P.2d 811 (1994). However, "[a] judge has a duty to intervene on the judge's own motion where counsel's remarks exceed the limits of professional freedom of discussion," and the lack of an objection does not automatically preclude consideration of the issue. *State v. Gibbons*, 256 Kan. 951, 962, 889 P.2d 772 (1995).

When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate courts for review. *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993). However, Miller contends this case is controlled by *State v. Heath*, 222 Kan. 50, Syl. ¶ 2, 563 P.2d 418 (1977), where we stated:

"It is constitutionally impermissible for a state prosecutor to impeach a defendant's exculpatory story told for the first time at the trial by cross-examining him as to his post-arrest silence after receiving the *Miranda* warning, and comment on his post-arrest silence during the state's closing argument should not be permitted."

In *Heath*, the State questioned the defendant about why he did not tell the police or the State about his alibi when he was arrested or prior to trial. In closing argument, the State argued it was inconsistent not to have told the police about it previously.

Our case is distinguishable from *Heath*. The cross-examination of the alibi witnesses did not concern Miller's post-arrest silence, but their own failure to timely come forward with an alibi that might have secured Miller's release. There was no error in using such delay to impeach their story.

"While it is generally true that a defendant is under no obligation to present evidence in his defense prior to time of trial, it does seem natural that a person who knew facts which would protect a defendant, particularly a family member, would come forward when the opportunity existed rather than remain silent. (*State v. Brown*, 16 Utah 2d 57, 395 P.2d 727 [1964].) This silence raises proper concern for the credibility of the story and is a proper subject of inquiry." *State v. Jackson*, 222 Kan. 424, 429-30, 565 P.2d 278 (1977).

Miller claims that the prosecution's commenting on Miller's delay in contacting the witnesses was improper even if there was no error in commenting on the witnesses' delay in coming forward on their own. While it is true a defendant is under no obligation to present evidence in his defense prior to the time of trial, it is not improper for the prosecution to test the credibility of an alibi by noting the alibi witnesses' delay in coming forward to exonerate the defendant and the defendant's delay in contacting such witnesses.

The comments in closing argument concerning these questions addressed the alibi witnesses' credibility, not that of Miller. Additionally, Miller was not questioned about his failure to report his alibi to police, as was Heath, or about his silence during custodial interrogation. The factual situation here differs from *Heath*, and the prosecutor did not err in his impeachment tactics. *Cf. State v. Higgins*, 243 Kan. 48, Syl. ¶ 1, 755 P.2d 12 (1988) (due process violated by impeaching defendant by using "defendant's silence at the time of his arrest and after receiving *Miranda* warnings").

In *State v. Massey*, 247 Kan. 79, 81, 795 P.2d 344 (1990), we noted that the prohibition on using post-*Miranda* silence during interrogation to impeach a defendant is rooted in the implied as-

surance in a *Miranda* warning that silence during custodial interrogation will carry no penalty. Miller's delay in contacting his alibi witnesses is not such a silence. The trial court did not commit reversible error in failing to stop this manner of impeachment of the alibi defense.

*Did the trial court err in recalling two members of the venire to serve as jurors after two seated jurors had been dismissed? Did the trial court err in not declaring a mistrial when the number of jurors fell to 11?*

We will consider these two issues together, as they raise similar problems. After a jury of 12 and 1 alternate had been selected and the State had made its opening statement, a recess occurred, and during that recess a juror informed the bailiff that he now realized he knew the victim's family.

After the court decided the juror should be dismissed, Miller's attorney asked the court if there was any way to salvage one of the potential alternates. The attorneys agreed which of previous venire members they would accept as an alternate, and eventually the trial court decided to impanel two alternates. Miller's attorney responded, "That would be fine."

During the same recess and while the judge and counsel were trying to solve the first problem, another juror approached the bailiff and said he also knew the victim's family. After questioning, this juror was also excused. At this point, the trial court suggested a mistrial but proposed that if the State and the defendant agreed, they would impanel a 12th juror and an alternate the following morning. After conferring with Miller, Miller's counsel mentioned to the court his concern that Miller's witnesses were already scheduled and agreed with the trial court's proposal.

The next morning the trial court was not comfortable with Miller's attorney's stipulation and made the following record of Miller's personal approval of the plan.

"THE COURT: . . . Mr. Miller, I'm going to ask you have you had all the time you need to discuss this procedure with your attorney?

"MR. MILLER: Yes, sir.

"THE COURT: Okay. Do you understand what we're going to do? We're going to impanel two of the people that were on the jury panel from yesterday.

"MR. MILLER: Yes, sir.

"THE COURT: And these have been selected by both your attorney and the State's attorney as acceptable jurors, you understand that?

"MR. MILLER: Yes, sir.

"THE COURT: Do you have any objection to us proceeding in this fashion?

"MR. MILLER: No, sir.

"THE COURT: Okay. You understand that I would—if you do have an objection, I would declare a mistrial and we'd start this trial over again with a fresh panel, you understand that, don't you?

"MR. MILLER: Yes, sir."

The trial court then impaneled the two venire members chosen by the attorneys. The State elected not to repeat its opening argument, but said it "would simply ask the new impaneled jurors to listen closely to the evidence and hear the story as it comes along."

In his assertion of error, Miller relies on the proposition that once a jury has been discharged it cannot be impaneled again to hear matters relating to the same case. This rule is not applicable here because all that happened was that two venire members who would not have been impaneled but for Miller's stipulation were placed on the jury. The jury had never been discharged, and the alleged error is not applicable in this situation.

The selection of additional or alternate jurors lies within the sound discretion of the trial court. The defendant has the burden of showing the substantial prejudice necessary to a finding that the trial court abused its discretion. *State v. Helms*, 242 Kan. 511, 517-18, 748 P.2d 425 (1988). Miller has presented no showing of substantial prejudice.

It is apparent that Miller made a decision to proceed with the trial while his alibi witnesses were available. We have often held that a litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. *State v. Prouse*, 244 Kan. 292, 298-99, 767 P.2d 1308 (1989).

Miller's final complaint about the unusual way the jury was impaneled is that because the substitute juror was not impaneled until after the State's opening statement, Miller was deprived of a fair

trial because the juror was not aware the evidence actually adduced did not match that proposed by the opening statement.

We go back to the rule previously stated that it is within the trial court's discretion whether to declare a mistrial. Miller continues to bear the burden of affirmatively showing an abuse of discretion by establishing he was substantially prejudiced. No such showing has been made.

The statements of counsel are not evidence, and the jury was instructed that "any statement made by the attorneys . . . in opening statement . . . or at any other time during the trial which are not supported by evidence should be disregarded by you." See *State v. Logan*, 236 Kan. 79, 84, 689 P.2d 778 (1984).

More importantly, Miller was personally informed that if he objected to the proposal of impaneling new jurors rather than declaring a mistrial, the court would declare a mistrial and restart the trial with a new jury panel. Miller acknowledged that he understood that, but failed to object. In *State v. Bennett*, 222 Kan. 358, 564 P.2d 540 (1977), the defendant stipulated to the manner in which the trial would proceed and was held to have waived whatever rights he had to a different procedure. Although Miller argues he should be relieved from his stipulation to prevent manifest injustice, there is no showing of such injustice here. Miller was tried by a panel he consented to and in an manner which he agreed to. Reversible error does not exist.

*Did the trial court err in comments it made to the jury panel before the start of the trial?*

Before naming the selected jurors and dismissing those venire members who were not seated on the jury, the trial court thanked all the venire members and, in the course of these remarks, stated:

"And I just want to tell you that we appreciate the fact you came in, because if we didn't have persons such as yourselves who were willing to take a day out of their lives to come down here to make up a jury panel for us, we'd never get juries. And the reality is that for every case we try, we end up handling nearly twenty of them without the necessity of a trial because people involved in the process know that citizens such as yourselves are willing to come down here and make up juries for us and that we have a system that will, in fact, work."

Miller claims this comment denied him a fair and impartial trial, citing *Edmonds v. State*, 395 S.E.2d 566 (Ga. App. 1990), in which the trial court committed reversible error in mentioning that in the afternoon it would be taking pleas in about 40 cases.

The first difficulty with this argument is that Miller made no objection to this allegedly improper comment below and thus the issue is not preserved on appeal. See *State v. Johnson*, 253 Kan. 75, 91, 853 P.2d 34 (1993).

In *State v. Grissom*, 251 Kan. 851, Syl. ¶ 36, 840 P.2d 1142 (1992), we stated that to warrant a new trial due to judicial misconduct, it "affirmatively must appear the conduct was of such a nature that it prejudiced the substantial rights of the complaining party."

Miller has shown no prejudice as a result of the trial court's remark, nor does any appear from an independent review of the record. The trial court's remark, read in context, does not suggest that Miller should have pled guilty, and no error is demonstrated.

*Should Miller's conviction be reversed for ineffective assistance of counsel?*

The argument of ineffective assistance of counsel was not raised below and will not be considered for the first time on appeal. See *State v. Hall*, 246 Kan. 728, 753, 793 P.2d 737 (1990). "[I]n an action asserting ineffective assistance of counsel, the trial court must have an opportunity to assess the performance of counsel before an appellate court will consider the matter." *Chamberlain v. State*, 236 Kan. 650, 659, 694 P.2d 468 (1985).

"The principal problem facing an appellate court when a claim of ineffective assistance of counsel is raised for the first time on appeal is that the trial court, which observed counsel's performance and was aware of the trial strategy involved, is in a much better position to consider counsel's competence than an appellate court is in reviewing the issue for the first time from a cold record." *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986).

There is no basis for a remand, nor has one been sought.

Miller argues *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995), permits this court to consider a claim of ineffective assistance of counsel for the first time on appeal in certain circum-

stances. In *Jenkins*, the allegations did not deal with deficient representation but with a clear conflict of interest that had not been waived. Under those circumstances, we indicated that remand was not necessary, but that is decidedly different from the situation here. This case does not fit within the narrow exception recognized in *Jenkins*, and we will not consider Miller's ineffective assistance contention for the first time on appeal.

*Was Miller denied a fair trial due to cumulative error?*

We held in *State v. Lumbrera*, 252 Kan. 54, 57, 845 P.2d 609 (1992) (quoting *Taylor v. State*, 251 Kan. 272, Syl. ¶ 6, 834 P.2d 1325 [1992]):

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' "

Miller received a fair trial. The issues were resolved by a jury that viewed the witnesses, was properly instructed, and reached a reasonable verdict based upon the evidence which was presented. Miller's contention of denial of a fair trial due to cumulative trial error is without merit.

Affirmed.

LARSON, J., not participating.