NOT DESIGNATED FOR PUBLICATION

No. 114,815

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RODNEY ALLEN WRIGHT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; DAVID A. RICKE, judge. Opinion filed December 2, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Officer, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*: A jury convicted Rodney Allen Wright of one count of criminal threat and one count of criminal damage to property. The district court sentenced him to 15 months in prison. Wright appeals, arguing the district court erred by failing to give a voluntary intoxication jury instruction. We affirm.

On March 29, 2015, at around 7 p.m. Joe Morgan met Justin Cook at a property Morgan was buying. An older house and Rodney Wright's camper both stood on the property. This property was next door to a property Morgan already owned.

1

Morgan and Cook began examining the house for possible repairs. Wright came out of his camper and told Morgan he was trespassing. Morgan told Wright he was buying the property and Wright had 30 days to vacate. Morgan also told Wright he owed Morgan for an electric bill. By agreement, a nearby shop Morgan owned supplied the electricity to Wright's camper. Wright became angry and told Morgan, "In 30 days, you'll be dead."

Wright then swung at Morgan and knocked his glasses off. Morgan tried to call the police on his flip phone, but Wright grabbed the phone and broke it in half. Morgan got out his other phone to call 911, but it was not getting any service. Morgan went to his truck, opened the door, and reached for his shotgun. Cook told Morgan not to pick up the gun, so Morgan left it in the truck.

Wright grabbed Morgan by the shoulders and spun him around. Morgan took out a knife and stabbed Wright. Wright pulled up his shirt and said, "Look what you did to me." Wright ran to a neighbor's house and then returned to his camper. Morgan testified at trial that he feared for his life because Wright had told him several times that when "he fights, he fights to kill."

Deputy Oakley arrived at around 7:20 p.m. He made contact with Wright, who showed Deputy Oakley his stab wound. Wright explained that he and Morgan had a disagreement over property. Morgan had told him he would be evicted in 30 days, and Wright responded that he could not be evicted because he was on his own property. Wright said he pushed Morgan, and Morgan stabbed him.

Wright resisted medical treatment at the scene. Deputy Oakley noticed a strong odor of alcohol coming from Wright while the emergency medical service (EMS) personnel attempted to treat him. Deputy Oakley determined Wright was too intoxicated

2

to decide for himself whether he was injured. The EMS transported him to the hospital even though Wright was not under arrest.

At the hospital, Wright told Deputy Oakley that he was working undercover for a law enforcement agency in Topeka. He yelled several times that he needed to get out of the hospital because his cover had been blown. Wright became so agitated that Deputy Oakley handcuffed him to the bed. Wright then said he was going to kill Morgan in 30 days.

Wright testified at trial that he had known Morgan for "20 some years" and he was just joking when he told Morgan he was trespassing. Wright stated that Morgan had told him he had a week to vacate the property. Morgan then reached for his phone. According to Wright, Cook must have thought he was going to grab Morgan, so Cook grabbed Wright. Wright swung free from Cook and in the process knocked Morgan's glasses off. When Morgan stepped forward, Wright heard something break. At the time, he thought Morgan had broken his glasses. At trial, however, Wright testified he "guess[ed] it was his phone." Wright denied ever touching Morgan's phone.

Wright testified that Morgan ran to his pickup truck and he caught up to Morgan just as he opened the truck's door. Morgan had his hand on his shotgun, but then spun around and stabbed Wright. Wright testified, "If the man stabbed me, he was going to shoot me. That's what I was worried about, and I got away from him." Wright then went to a neighbor's house, and someone called law enforcement.

Wright denied ever threatening Morgan. He denied taking any medication or anything that would cloud his recollection. He testified he began drinking a six pack of beer that day around 2:30 p.m. and finished around 7 p.m. During that time, he also ate a sandwich, drank a Pepsi, and took a nap. He did not believe he was intoxicated at the

3

time of the incident. After the incident, he returned to his trailer and drank half a can of beer, which had already been opened.

Wright did not remember telling Deputy Oakley that he was an undercover officer with the Shawnee County Sheriff's Office. He added, though, that at the time he was "pretty freaked out" and "anything could have happened." He also did not remember telling the officer at the hospital that he was going to kill Morgan in 30 days.

After the close of evidence, the district court held a jury instructions conference. Neither party requested or discussed a voluntary intoxication instruction. Defense counsel did not present a voluntary intoxication defense in closing argument.

The jury found Wright guilty of criminal threat and criminal damage to property and acquitted him of criminal restraint and battery. The district court sentenced him to 15 months in prison. Wright appeals.

Wright argues the district court erred when it failed to instruct the jury *sua sponte* on the defense of voluntary intoxication. He contends the instruction was legally appropriate because criminal threat is a specific intent crime. He asserts it was factually appropriate because there was sufficient evidence of his intoxication. Finally, he argues there was a real possibility the jury would have returned a different verdict if given an instruction on voluntary intoxication.

The State argues the district court did not err in not moving *sua sponte* to provide a jury instruction on voluntary intoxication. It argues that such an instruction would have been legally appropriate. The State contends, however, that the instruction would not have been factually appropriate because Wright did not provide sufficient evidence of his intoxication. The State also asserts that even if the court did err in not giving the instruction, the error was harmless given the evidence presented at trial.

The standard of review when addressing challenges to jury instructions is based upon the following analysis:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Wright did not request an instruction on involuntary intoxication nor did he object to the district court's failure to give one. When a defendant challenges a district court's failure to give a jury instruction for the first time on appeal, we apply the clearly erroneous standard identified in 2015 Supp. K.S.A. 22-3414(3). To establish clear error under this standard, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

A defendant may use a voluntary intoxication defense to negate the intent element of a specific intent crime. *State v. Hilt*, 299 Kan. 176, 192, 322 P.3d 353 (2014). Under K.S.A. 2015 Supp. 21-5202(h), a specific intent crime is any crime "in which the mental culpability requirement is expressed as 'intentionally' or 'with intent.'" Criminal threat is "any threat to: (1) Commit violence communicated *with intent* to place another in fear." (Emphasis added.) K.S.A. 2014 Supp. 21-5415(a)(1). Because it has the requisite mental culpability requirement, criminal threat is a specific intent crime. See also *State v.*

5

*Meinert*, 31 Kan. App. 2d 492, 499, 67 P.3d 850 (2003) (finding criminal threat requires specific intent based on an earlier version of the statute).

Even though a voluntary intoxication defense was legally appropriate for Wright's charged crime, a jury instruction on voluntary instruction would have conflicted with Wright's theory of defense at trial. Wright correctly points out that a defendant may rely upon a voluntary intoxication defense even if it is inconsistent with the defendant's other theories of defense. *State v. Shehan*, 242 Kan. 127, 130-31, 744 P.2d 824 (1987). Still, Kansas courts have shown reluctance to reverse district courts for failing to give the theory of defense instructions *sua sponte*.

For example, in *State v. Sappington*, 285 Kan. 158, 169 P.3d 1096 (2007), the defendant relied on a mental disease or defect defense at trial and did not request a voluntary intoxication instruction. On appeal, however, he argued the district court should have *sua sponte* given a voluntary intoxication instruction. Our Supreme Court held that the district court did not err in failing to give the instruction *sua sponte*. In reaching this conclusion, the court noted the ability to present a theory of defense is fundamental to a fair trial and "imposing a defense upon a defendant which is arguably inconsistent with the one upon which he completely relies—by providing the jury with a defense instruction that neither party requests—is akin to denying the defendant the meaningful opportunity to present his chosen theory of defense." 285 Kan. at 165. Accordingly, the *Sappington* court held that district courts do not have "to instruct juries on every possible theory of defense for which some evidence has been presented when the defendant has not relied upon that defense." 285 Kan. at 165; see *State v. Brown*, 291 Kan. 646, 658-59, 244 P.3d 267 (2011); *State v. Trussell*, 289 Kan. 499, 505, 213 P.3d 1052 (2009).

In this case, Wright presented a self-defense theory at trial and made no mention of a voluntary intoxication defense. In *State v. Gonzales*, 253 Kan. 22, 24, 853 P.2d 644

(1993), our Supreme Court found that the district court did not err in failing to give a voluntary intoxication instruction *sua sponte* when the defendant had relied on a theory of self-defense at trial. The *Gonzales* court noted such an instruction would have undermined the defendant's chosen theory of self-defense because "[t]he very credibility of his theory of self-defense depended on his convincing the jury that he was alert and aware of the danger to himself from the victim." 253 Kan. at 24. Similarly, if the district court here had instructed the jury about voluntary intoxication, this would have undermined Wright's chosen defense that he was aware of the danger that Morgan presented and he was reacting to that danger. Therefore, the district court did not commit clear error in not giving the instruction at issue.

Affirmed.